[No. B044208. Second Dist., Div. Six. Nov. 27, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
RICKIE LYNN DAGGETT, Defendant and Appellant.

**COUNSEL**

Raymond L. Girard, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Robert F. Katz and Mark Alan Hart, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, J.**—Rickie Lynn Daggett was charged with 8 counts of sexual offenses against Daryl H., a child under age 14 and more than 10 years younger than Daggett. A jury found him guilty of four of those counts.

Daggett contends, among other matters, that the trial court abused its discretion when it refused to hold a hearing pursuant to Evidence Code section 782 on the admissibility of evidence that Daryl had been previously molested by other children. He also asserts prosecutorial misconduct. We agree and reverse.

### FACTS

After Daryl had been charged in juvenile court with molesting two younger children, he told the police in February of 1989, that Daggett had molested him on three occasions in 1987: in September prior to his eleventh birthday, then around Thanksgiving and finally shortly after Christmas. Daggett had been married to Daryl's mother and they all lived together, along with two of Daggett's natural children, from September of 1987 through the early part of 1988.

While the juvenile charges were still pending against Daryl, the charges arising from Daryl's accusations against Daggett came to trial.

Daggett brought a motion pursuant to Evidence Code section 782 seeking to introduce evidence that Daryl had charges pending against him in juvenile court, and that Daryl had been molested at age five by two older children. Evidence of the pending juvenile charges was said to be relevant to Daryl's motive for accusing Daggett, and evidence of Daryl having been molested by other children was said to be relevant to his ability to describe the acts of which he accused Daggett.

The court found the offer of proof insufficient to require a hearing on whether evidence should be admitted to show that Daryl was molested at age five, but after a hearing the court decided to allow evidence of the pending juvenile charges.

At trial Daryl testified that Daggett molested him, and described acts of touching, oral copulation and sodomy. He admitted on cross-examination that he had been charged with molesting two younger children, and that he had not accused Daggett until after the charges had been filed. But Daryl's counsel, who was present at trial, "objected" on Fifth Amendment grounds to questions such as whether Daryl admitted to having molested the

children. The court "sustained" the objections, and Daryl did not answer. Daggett asked the court to strike Daryl's direct testimony on the ground that he could not be cross-examined, but the court denied the motion.

Doctor Laura Slaughter was called by the prosecution. She testified that she took a medical history from Daryl and that he claimed he had been molested. When the prosecutor asked what the nature of the claim was, Doctor Slaughter testified that Daryl told her of various sex acts committed on him by Daggett including anal contact, oral copulation and mutual masturbation. She testified that although Daryl's physical examination was "normal," it did not mean he was not sodomized or that oral copulation did not take place.

On cross-examination Doctor Slaughter was shown the report she made on Daryl and was asked whether Daryl denied having been molested. Doctor Slaughter replied that Daniel denied having been molested. When asked whether Daryl and Daniel referred to the same person, she replied, "No. We have a William . . . who is age five."

The court called a recess at Daggett's request, and Daggett moved for a mistrial. The basis of the motion was that Doctor Slaughter was referring to the wrong report when she testified Daryl told her he had been molested. She was apparently referring to a report made by William, another child who had accused Daggett of molesting him. Pursuant to an *in limine* motion, the court had previously ordered that no reference be made of any conduct concerning William. The court denied the motion for mistrial on the ground that any prejudice arising from Doctor Slaughter's reference to the wrong report could be cured by cross-examination. On cross-examination Doctor Slaughter admitted Daryl told her he had not been molested.

Daggett testified and denied that he had ever molested Daryl.

In final argument the prosecutor discussed the juvenile charges pending against Daryl, and told the jury that Daryl was entitled to the presumption of innocence. The prosecutor's argument continued as follows:

"Now, if you can't resist and you're willing to assume for purposes of this case that he committed some similar act, then think about it this way. Since the act of which Daryl is accused of is after his molest by Mr. Daggett, the most logical—

"Mr. Adams [Defense Counsel]: I believe I'll object as improper argument

"The Court: Why so?

"Mr. Adams: I think it's in and [*sic*] area that was foreclosed to me and I think should be foreclosed to the prosecution.

".     .     .     .     .     .     .     .     .     .     .     .     .     .     .     .     .

"The Court: I'll sustain the objection. I think that's going beyond argument. You may proceed.

"[Prosecutor]: Inappropriate sexual behavior is not inherent in children. It is learned in the same fashion—

"Mr. Adams: I object. That is the same argument.

"The Court: Overruled.

"[Prosecutor]: In the same fashion and in the same way as they learn other behavior. They are exposed to it. It is predominantly learned from being exposed to it, ergo, or was the word therefore, corroborating the testimony of Daryl. Inappropriate behavior learned from Mr. Daggett by being sodomized by Mr. Daggett, molested by Mr. Daggett—

"Mr. Adams: I'll object and request it be stricken."

The court took a "ten minute" recess to discuss the matter in chambers. After a discussion the court brought the jury back and instructed them as follows:

"Ladies and Gentlemen, I earlier read this instruction to you. I'm going to read it again.

" 'When a witness refuses to testify to any matter, relying on the constitutional privilege against self-incrimination, you must not draw from the exercise of such privilege any inference as to the believability of the witness or as to the guilt or innocence of the defendant.'

"I am ordering stricken from the closing argument of [the prosecutor] that portion of the argument that started essentially when I told him to begin again and up to the last objection. You're to disregard it and pay it no attention."

## DISCUSSION

■ Daggett contends the court erred when it refused to allow him to introduce evidence that Daryl had been molested by older children at age five.

Evidence Code section 782 provides a procedure for admitting evidence of the complaining witness's sexual conduct in certain sex offense prosecutions, including prosecutions brought under Penal Code sections 286, 288 and 288a. A written motion must be made which includes an offer of proof of the relevancy of the evidence of sexual conduct and its relevancy in attacking the credibility of the complaining witness. If the court finds the offer of proof sufficient it shall order a hearing out of the presence of the jury at which the complaining witness may be questioned. If at the conclusion of the hearing the court finds the evidence relevant and not inadmissible pursuant to Evidence Code section 352, it may make an order stating what evidence may be introduced and the nature of the questions permitted.

A child's testimony in a molestation case involving oral copulation and sodomy can be given an aura of veracity by his accurate description of the acts. This is because knowledge of such acts may be unexpected in a child who had not been subjected to them.  ■  In such a case it is relevant for the defendant to show that the complaining witness had been subjected to similar acts by others in order to cast doubt upon the conclusion that the child must have learned of these acts through the defendant. Thus, if the acts involved in the prior molestation are similar to the acts of which the defendant stands accused, evidence of the prior molestation is relevant to the credibility of the complaining witness and should be admitted.

■ Here, Daggett's offer of proof was that he learned, from an inspection of the prosecutor's file, Daryl told a mental health worker and Doctor Slaughter that he had been molested by two older children, ages eleven and eight, when he was five years old. This should have been sufficient for the court to have ordered a hearing to determine whether the acts of prior molestation were sufficiently similar to the acts alleged here. The court erred when it failed to do so.

The error was compounded when the prosecutor argued to the jurors that if they believed Daryl molested other children, he must have learned that behavior from being molested by Daggett. This is the type of argument the excluded evidence was intended to refute.

■ The prosecution may argue all reasonable inferences from the record, and has a broad range within which to argue the facts and the law. (See

*People* v. *Terry* (1962) 57 Cal.2d 538 [21 Cal.Rptr. 185, 370 P.2d 985].) The prosecutor, however, may not mislead the jury. ▉ The prosecutor asked the jurors to draw an inference that they might not have drawn if they had heard the evidence the judge had excluded. He, therefore, unfairly took advantage of the judge's ruling. Vigorous advocacy is admirable, but when it turns into a zeal to convict at all costs, it perverts rather than promotes justice.

The trial court's effort to strike the offending portion of the argument was ineffective. The judge obviously did not want to restate the improper argument. It is doubtful, however, that a juror returning from a 10-minute recess would understand the court's instruction. When the judge told the jurors to disregard "that portion of the argument that started essentially when I told [the prosecutor] to begin again and up to the last objection," they were more likely bewildered than enlightened.

The prosecution should pay scrupulous attention to the rules when trying its cases. This is a better way of preserving a conviction than by relying on the safety net of harmless error. The error here was not harmless. The evidence at trial consisted of Daryl's word against Daggett's. Because the excluded evidence was relevant to Daryl's credibility, it is reasonably probable that a result more favorable to Daggett would have been obtained in the absence of the error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## II

▉ Reversal is also compelled by the error that occurred when Doctor Slaughter referred to the wrong report. The manner in which the prosecutor took advantage of this oversight so prejudiced the case against Daggett that he was denied a fair trial.

We assume by the time of trial, the prosecutor was familiar with this case. He knew that Daryl had denied to Slaughter that Daggett molested him. It is therefore odd that he would even call Slaughter to testify. Assuming that he had some purpose in doing so, when Slaughter began testifying that a claim of molestation had been made, he should have stopped her right there, and called for a bench conference.

Instead, knowing that Daryl had denied to Slaughter that Daggett had molested him, the prosecutor actually asked her the nature of the claim, and then let her testify to a catalog of sexual abuses that had nothing to do with Daryl. The judge's valiant efforts to cure the errors caused by the prosecutor's conduct were simply not effective. Instead of striking the improper

testimony, the judge merely allowed counsel to bring out the error in cross-examination. During its deliberation the jury asked to have Slaughter's testimony reread, and once again the jurors heard this prejudicial testimony when it was reread to them.

The prosecution had absolutely no excuse for asking Slaughter about the nature of the claim. Tactics like these violate the rules of professional conduct (see ABA Model Code Prof. Responsibility, EC 7-25, ["[A] lawyer should not by subterfuge put before a jury matters which it cannot properly consider"]). These tactics assure reversal and bring added misery to the victim who may have to testify again. They also do violence to an overburdened court system barely able to accommodate an overwhelming number of cases in a manner that accords litigants justice and equity. The prosecution, as an integral part of that system, has an unqualified responsibility to try its cases with fairness and integrity. That did not happen here.

■ "It is a prosecutor's duty 'to see that those accused of crime are afforded a fair trial.' (*People* v. *Talle* (1952) 111 Cal.App.2d 650, 667 [245 P.2d 633].) 'The role of the prosecution far transcends the objective of high scores of conviction; its function is rather to serve as a public instrument of inquiry and, pursuant to the tenets of the decisions, to expose the facts.' (*People* v. *Franklin* (1961) 194 Cal.App.2d 23, 29-30 [14 Cal.Rptr. 375].)" (*People* v. *Andrews* (1970) 14 Cal.App.3d 40, 48 [92 Cal.Rptr. 49].)

"As the representative of the government a public prosecutor is not only obligated to fight earnestly and vigorously to convict the guilty, but also to uphold the orderly administration of justice as a servant and representative of the law. Hence, a prosecutor's duty is more comprehensive than a simple obligation to press for conviction. As the court said in *Berger* v. *United States* (1935) 295 U.S. 78, 88 [79 L.Ed. 1314, 55 S.Ct. 629]: '[The Prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.' [Citations.]" (*People* v. *Kelley* (1977) 75 Cal.App.3d 672, 680 [142 Cal.Rptr. 457]; see also *People* v. *Pitts* (1990) 223 Cal.App.3d 606, 690-735 [273 Cal.Rptr. 757].)

## III

■ In the event Daggett is retried, we take up the issue of whether the court erred when it refused to strike Daryl's direct testimony. The motion to strike was made on the ground that Daggett was denied the right to cross-examine Daryl by the exercise of Daryl's privilege against self-incrimination.

Where a party cannot cross-examine a witness because the witness refuses to answer, the trial court may strike the direct examination. (*People* v. *Abner* (1962) 209 Cal.App.2d 484, 489 [25 Cal.Rptr. 882].) The decision whether to strike the direct examination is left to the discretion of the trial court, and the refusal to answer only one or two questions need not lead to the striking of the testimony. (*People* v. *Robinson* (1961) 196 Cal.App.2d 384, 390 [16 Cal.Rptr. 484].)

Here Daryl testified on cross-examination that he had been charged with molesting two children, and that he did not tell a police detective during an interview in 1988 that Daggett had molested him, but only told the police after he had been charged. The only questions Daryl refused to answer were those concerning whether he admitted he molested the children.

Although Daggett might have obtained some benefit if Daryl had answered that he told others he molested the children, Daggett received the essence of what he needed for impeachment purposes from the answers Daryl gave to other questions concerning the charges against him. Under the circumstances, we find no abuse of discretion in the trial court's denial of Daggett's motion to strike all of Daryl's direct examination.

The judgment is reversed.

Stone (S. J.), P. J., and Abbe, J., concurred.

A petition for a rehearing was denied December 27, 1990, and the opinion was modified to read as printed above.