Filed 8/21/20 P. v. Heilman CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B295703 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. BA466367 |
| JOSEPH HEILMAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Drew E. Edwards, Judge. Affirmed.

G. Martin Velez, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted defendant Joseph Heilman of felony possession of methamphetamine with the intent to sell. On appeal, defendant contends: (1) the court should have declared a mistrial after the arresting officer volunteered improper testimony about defendant's criminal history; and (2) the prosecutor committed prejudicial misconduct during closing argument. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

On February 23, 2018, defendant was driving near York Boulevard and North Avenue 50 in the Highland Park neighborhood of Los Angeles. Around 8:00 p.m., Jon Daymen, an officer with the Los Angeles Police Department (LAPD), and his partner, Officer Reyes,[1] stopped defendant's car because its registration tags were expired.

During the stop, defendant told the officers that he had a "scale, a black case, and his dope" underneath one of the seats of his car.[2] Reyes searched the car and found a black cartridge containing a bag holding nearly 21.5 grams of methamphetamine, a scale, and three empty sandwich bags. Defendant told the officers he had just purchased the methamphetamine.

---

[1] At the time of trial, Reyes no longer worked for the LAPD.

[2] Prior to trial, defendant and the People stipulated that the search of defendant's car was legal to prevent the jury from hearing evidence that defendant was on probation at the time of the traffic stop, which subjected him to search conditions.

Reyes also found two cellular phones on defendant, but defendant didn't have any money on him or inside his car. The officers didn't find any items for using methamphetamine, such as a pipe or a syringe, and defendant didn't appear to be under the influence of methamphetamine or any other substance.

Michael Geitheim, an LAPD officer, testified as the People's narcotics expert. According to Geitheim, the area of Highland Park where defendant was arrested has a lot of drug activity, including the sale of methamphetamine.

A usable dose of methamphetamine for a typical user is about 0.02 grams. The drug is typically sold in plastic sandwich bags, and users who come into contact with police often carry between .10 grams and 1 gram of methamphetamine. 21.5 grams of methamphetamine would provide a single daily user between 500 and more than 1,000 doses, and it would take about one year to consume. That amount of methamphetamine would sell on the street for between $850 to several thousand dollars. According to Geitheim, it is uncommon for someone to possess 21.5 grams of methamphetamine for personal use only, and he had never encountered anyone carrying that much methamphetamine solely for personal use.

The amount of methamphetamine defendant was carrying in his car could be divided nearly evenly into three 7-gram increments. Seven grams of methamphetamine is the equivalent of two "eight balls," or two eighths of an ounce. According to Geitheim, methamphetamine and other drugs are "commonly sold" in eight-ball units. Sellers of methamphetamine often use scales, like the one found in defendant's car. Sellers also may carry two phones—one for facilitating drug sales and the other for personal use.

When Geitheim was presented a hypothetical scenario based on the facts of this case, he opined that defendant intended to sell the methamphetamine found inside his car. Specifically, he based his opinion on the following factors: (1) the amount of methamphetamine—both the large quantity and that it was divisible into eight-ball units; (2) the presence of a scale and empty sandwich bags; (3) the lack of paraphernalia for using the drug; (4) defendant's lack of any symptoms of being under the influence of the drug; (5) the presence of two cellular phones; and (6) that the drug was hidden under the seat of defendant's car.

Defendant was arrested and charged with felony possession of methamphetamine with the intent to sell (Health & Saf. Code, § 11378). At trial, defendant conceded he possessed the methamphetamine and other items found during the search of his car. He contested only whether he possessed those items with the intent to sell the drug. A jury convicted defendant of possessing methamphetamine with the intent to sell, and the court sentenced him to two years in prison.[3]

Defendant appeals.

## DISCUSSION

**Improper Character Testimony**

Defendant contends the court erred in denying his motion for a mistrial after Daymen volunteered testimony about defendant's criminal history. While we agree that Daymen's

---

[3] As a result of defendant's conviction in this case, the court found he was in violation of probation in two other cases. The court ordered defendant's two year sentence in this case to run concurrently with his sentence of six years and four months in those cases.

testimony was improper, the court did not abuse its discretion in denying defendant's motion.

## 1.    Relevant Background

While cross-examining Daymen, defense counsel asked the officer whether he knew "how long [defendant] has been using drugs." The prosecutor objected to defense counsel's question, which the court overruled. Daymen initially responded, "[Defendant] is a chronic offender in Northeast Division. I can answer the question."

Defense counsel and Daymen then engaged in the following exchange:

> "Q:    Do you know how long [defendant's] been using? Do you have personal knowledge of how many years he's been using?

> [¶] … [¶]

> "A:    [Defendant] is a chronic offender in Northeast Division which he has come in contact with many officers and I have had contact with [him] in the past. [¶] During the stop, I recognized him, but I didn't remember where because I had been out of the field for some time because I had a cardiac issue on the job where I had been out for almost 11 months. So during the traffic stop, I recognized him from the past. I just didn't know from where. So either I stopped him in the past or in a pedestrian stop or a traffic stop or I arrested him in the past. [¶] We were talking when he was in the back of the car, and I was telling him

5

about my medical issue. So I don't know how long he's been using meth, but he is a known narcotics user to officers in Northeast Division. Which officers, I don't know.

"Q: [H]e is a known narcotics user, correct?

"A: Yes. On this chronic offender list that was at the station which he was taken off of after being arrested, he was listed on there of being an offender of 10851 which is driving without owner consent, basically driving a stolen car.

"Q: You've never arrested him for selling drugs, correct?

"A: That I don't know.

"Q: So the answer to the earlier question, to make it short, you don't know how long he's been using methamphetamine?

"A: I guess the answer to that would be 'no.' "

After Daymen's cross-examination, defense counsel moved for a mistrial, arguing Daymen improperly testified about defendant's criminal history, including prior contacts with the police and an arrest for driving a stolen vehicle. The court denied the motion, reasoning that "counsel opened the door, and the officer simply gave the reasons why, what his knowledge was as to [defendant] in his prior judgment. In [the court's] view, the

defense counsel opened the door for the officer to give his honest answer regarding [defendant's] prior drug use." The court then instructed the prosecutor not to question Daymen about defendant's prior convictions and contacts with the police, but it told the prosecutor he could ask Daymen to define what a "chronic offender" means.

During Daymen's redirect examination, the prosecutor asked the officer to explain what he meant when he testified that defendant is a "chronic offender." Daymen replied, "There is a sheet that is given to us by our detectives. There is a whole bunch of individuals. It could be a variety of different types of crimes that occurred. We are only given that list. If we ever come in contact with that person, that we are aware of whatever the circumstances may be. I wasn't saying he was guilty right then and there. I didn't even know he was at York and Avenue 50. [¶] A chronic offender means there is a list of individuals that have come in contact with the police, and it could be a variety of different reasons. If an officer comes into contact, hey we want to let you know this is A through Z, a safety issue, or if the public says blah, blah, blah, blah."

During closing argument, the prosecutor referenced Daymen's testimony, telling the jury that defendant "is a chronic offender, a law breaking offender."

**2.      Applicable Law and Standard of Review**

A court should grant a mistrial if it " 'is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.]' " (*People v. Ledesma* (2006) 39 Cal.4th 641, 683 (*Ledesma*).) In other words, a mistrial is warranted "when defendant's ' " ' "chances of receiving a fair trial have been irreparably damaged." ' " ' [Citation.]" (*People v. Williams* (2016)

7

1 Cal.5th 1166, 1185 (*Williams*).) A witness's volunteered statement can provide a basis for a mistrial when it causes incurable prejudice. (*Ledesma*, at p. 683.) But it is only in the "exceptional case" that improper testimony is of such a character that its negative effect cannot be cured by the court's admonitions. (*People v. Olivencia* (1988) 204 Cal.App.3d 1391, 1404 (*Olivencia*).)

"Whether an incident is prejudicial and requires a mistrial is 'by its nature a speculative matter,' and the ' "trial court is vested with considerable discretion in ruling on mistrial motions." ' [Citation.]" (*Williams*, *supra*, 1 Cal.5th at p. 1185.) We therefore review a court's denial of a mistrial for abuse of discretion. (*People v. Bolden* (2002) 29 Cal.4th 515, 555.)

### 3. The court did not abuse its discretion in denying defendant's request for a mistrial.

Under Evidence Code section 1101, evidence of a defendant's prior criminal acts is generally inadmissible to prove the defendant's propensity to commit the charged offense. (Evid. Code, § 1101, subd. (a); *People v. Cole* (2004) 33 Cal.4th 1158, 1194.) While exceptions to this rule exist, such as the admission of evidence of prior domestic violence or sex-related conduct to prove the defendant committed a charged offense involving similar conduct (Evid. Code, §§ 1108 [sex-related conduct], 1109 [domestic violence]), or the use of evidence of prior bad acts to prove a fact other than the defendant's propensity to commit the charged offense (*Id.*, § 1101, subd. (b)), it is undisputed that none of these exceptions apply to Daymen's testimony about defendant's criminal history.

The court nevertheless found defendant invited Daymen's testimony when defense counsel asked the officer if he knew how

long defendant had been using methamphetamine or drugs in general. (See *People v. Visciotti* (1992) 2 Cal.4th 1, 72 [a defendant cannot claim the trial court erroneously admitted evidence of prior bad conduct when the defendant elicited or introduced such evidence].) We disagree that defense counsel's questions opened the door for Daymen to testify generally about defendant's criminal history.

Daymen's testimony that defendant was a "chronic offender" who had been convicted of driving a stolen vehicle did not fall within the scope of defense counsel's questions concerning the officer's knowledge of defendant's drug use. Counsel's first two questions asked only whether Daymen knew the extent of defendant's drug use; counsel didn't ask the officer whether he knew the extent of defendant's criminal record. Although defense counsel eventually asked Daymen whether defendant had been arrested for selling drugs, that was only after Daymen had repeatedly testified about defendant's criminal history, and that question didn't call for any response concerning defendant's non-drug-related offenses. Moreover, Daymen never testified that defendant's status as a "chronic offender" stemmed from the officer's personal knowledge of defendant's drug use. Although he claimed defendant was a "known narcotics user to officers in Northeast Division," Daymen later testified he didn't know which officers were aware of defendant's drug use. Indeed, Daymen eventually testified that he had no knowledge of how long defendant had been using methamphetamine or any other drugs. That was the only response Daymen should have provided when defense counsel asked him whether he knew how long defendant had been using drugs.

Even though Daymen improperly testified about defendant's criminal history, the court didn't err in denying defendant's request for a mistrial. (*Ledesma*, *supra*, 39 Cal.4th at p. 683 [improper testimony warrants mistrial only when it irreparably prejudices the defendant's right to a fair trial].) After Daymen testified about defendant's criminal history, defense counsel never sought to strike Daymen's testimony, nor did she request the court to admonish or instruct the jury not to consider that testimony. As noted above, it is only the "exceptional case" where a court's admonition cannot cure the prejudicial effect of improper character testimony. (*Olivencia*, *supra*, 204 Cal.App.3d at p. 1404.) This is not an exceptional case.

At trial, defendant conceded that he possessed the methamphetamine, three empty sandwich bags, scale, and two cellular phones found during the search of his car. He contested only whether he possessed the methamphetamine with the intent to sell. The evidence at trial overwhelmingly contradicted this defense.

As the People's narcotics expert testified, the nearly 21.5 grams of methamphetamine defendant possessed would take a typical daily user more than a year to consume. It was therefore highly unlikely defendant possessed such a large amount of methamphetamine solely for personal use. Defendant also displayed no symptoms of being under the influence of methamphetamine, and he was not carrying paraphernalia to use the drug, further contradicting his defense. In addition to the large amount of methamphetamine, defendant possessed empty sandwich bags, in which the drug is commonly sold. And the amount of methamphetamine defendant possessed was divisible into commonly sold quantities of the drug that could be evenly

distributed among the empty bags. That defendant had two cellular phones on his person further bolsters the inference that he possessed the methamphetamine with the intent to sell since drug dealers often carry separate phones—one for personal use and one to facilitate drug sales.

In short, because any error in admitting Daymen's testimony did not result in incurable prejudice, the court did not abuse its discretion when it denied defendant's motion for a mistrial.

**Prosecutorial Misconduct**

Defendant next contends the prosecutor committed several instances of prejudicial misconduct during closing argument. Specifically, defendant argues the prosecutor: (1) disparaged defense counsel; (2) relied on facts outside the record; (3) misled the jury; and (4) improperly vouched for the credibility of Daymen and Geitheim. As we explain below, defendant has forfeited two of his challenges to the prosecutor's argument. To the extent defendant has preserved his claims, any misconduct was harmless.

**1. General Legal Principles and Standard of Review**

A prosecutor commits prejudicial misconduct under the federal constitution when he engages in conduct that is so " ' " ' "egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." ' " [Citations.]' " (*People v. Navarette* (2003) 30 Cal.4th 458, 506.) Under California law, a prosecutor commits reversible misconduct if he makes use of " 'deceptive or reprehensible methods' when attempting to persuade either the trial court or the jury, and it is reasonably probable that without such misconduct, an outcome more

11

favorable to the defendant would have resulted." (*People v. Riggs* (2008) 44 Cal.4th 248, 298.)

A prosecutor is afforded "wide latitude" during closing argument. (*People v. Williams* (1997) 16 Cal.4th 153, 221.) The argument may be vigorous and incorporate appropriate epithets as long as it amounts to fair comment on the evidence, and it may include reasonable inferences drawn from the evidence. (*Ibid.*) "[W]hen the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.) " 'In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' [Citation.]" (*People v. Brown* (2003) 31 Cal.4th 518, 553–554.)

## 2. Relevant Background

### 2.1. Argument Addressing Reyes's Missing Body Camera Footage

At trial, defense counsel asked Daymen whether Reyes's body camera footage from the search of defendant's car was available. Daymen explained that the footage was stored in the "body worn system at the Los Angeles Police Department." Although Daymen could not access and had never viewed footage from Reyes's body camera depicting the search of defendant's car, he suggested such footage might exist. Because Reyes no longer worked for the LAPD, any footage from his camera would have to be obtained through a subpoena.

The prosecutor later complained that the jury would likely question why the footage of the search of defendant's car from Reyes's body camera had never been presented at trial. The prosecutor stated he had obtained some footage from the camera, which he had turned over to the defense, but the footage didn't depict any part of the search of defendant's car. The court excluded the footage from Reyes's body camera.

Before closing argument, the prosecutor asked the court to preclude defense counsel from asking the jury to question why footage of the search of defendant's car from Reyes's body camera had never been presented at trial. The court denied the prosecutor's request because the missing body camera footage was a "core issue in this case."

During closing argument, defense counsel stated: "Officer Reyes resigned shortly after this incident. The body cam is something you heard that they wear so that everything they do is captured. [¶] Magically the body cam and the search of [defendant] disappeared. The whole thing. We searched the vehicle very carefully. We searched and found the phones on him. None of that is captured on the body cam, but disappeared somehow. There is no way for any of us to see what really went on."

During rebuttal, the prosecutor responded to defense counsel's argument concerning Reyes's body camera: "[Defense counsel] mentioned Officer Reyes's body worn video and how it magically disappeared. She is in possession of Officer Reyes's body worn video. Every piece of evidence to turn over to her and she has right now[.]" Defense counsel objected to the prosecutor's argument, stating it "is not true." The court overruled the objection, noting that counsel's statements were "argument."

The prosecutor continued, "When she gets up and makes you think I am hiding something it is a bad faith argument. She has all of the body worn videos that I have. If there is anything that could have helped her case, she has the entire right to get up here and show you what she thinks would help. She can play the body worn video if she wants to." Defense counsel objected again, arguing the prosecutor was improperly shifting the burden of proof. The court overruled defense counsel's objection.

The prosecutor went on, "You can do nothing. If she had something in the video that she thought would prove her defense, she could have played that video. I just want you guys to know everything that I have[,] she has. [¶] I will preface by saying she is not required to produce any evidence. She can take a nap, rest. … [¶] If they wanted to present that evidence they could have. If they wanted to present evidence to you in the form of that body worn video that magically disappeared, they could have."

After defense counsel objected, stating that defendant was not in possession of any body camera footage of the search, the court called both attorneys to a sidebar. The court told the prosecutor and defense counsel that it didn't believe the prosecutor's argument was burden shifting, and that the two sides should not be arguing about whether there was a discovery violation. After the prosecutor told the court that "everything has been turned over to defense counsel," the court stated, "I don't think you can go into that anymore. You certainly have the right to feel they could call logical witnesses. This is a proper argument. I don't think there is a discovery violation. The defense objection is overruled."

## 2.2. Argument Addressing the Officers' Credibility

During closing argument, defense counsel asked the jury to question Geitheim's credibility: "The expert witness—I think both officers testified to some extent as experts. He is not going to come here and say, you know, I don't think possession was for sale. I think it was for personal use. Of course, he is going to say it is for sales. He is going to say whatever he can to support his opinion."

On rebuttal, the prosecutor responded: "The defense talked about how there are officers that testified. You have to judge them as witnesses. Look at them and see if they are biased. Maybe the expert got up here and had his mind made up. He is not going to get up here and say he didn't possess it for sale. He is not going to get up here and tell you something that isn't true. [¶] If you think about that argument, that means you have these two cops that have combined 40 years of experience on the force coming in here to lie to you guys under oath about a meth sales case. They are not going to risk their careers and say this guy possessed meth for sale just on a whim just because they wanted to. [¶] They swore to tell the truth. He told you about the stop and what he found. He thought this guy possessed it for sale. [¶] [The drug expert] came in here [and] told you based on his experience what he thought. To question those two officers' credibility doesn't make sense. There is nothing they said that causes you guys to believe that they had a bias against this defendant. They got up here and risked their careers to lie to you about possession of meth for sales case. This is not a murder case where they are going to get up here and say, "hey, he possessed this for sale."

Defendant did not object to any of the prosecutor's statements concerning the officers' credibility.

### 3. Forfeiture and Ineffective Assistance of Counsel

As a preliminary matter, defendant has forfeited two of his claims of prosecutorial misconduct by failing to object below. To preserve a claim of prosecutorial misconduct on appeal, a defendant must make a timely and specific objection and request an admonition. (*People v. Clark* (2016) 63 Cal.4th 522, 577 (*Clark*).) Otherwise, the argument is reviewable only if an objection would have been futile or an admonition would not have cured the harm caused by the misconduct. (*Ibid*.)

First, defendant forfeited his claim that the prosecutor improperly attacked defense counsel's integrity. Although defendant objected that the prosecutor was shifting the burden of proof after he argued that defense counsel could show the jury any footage from Reyes's body camera that she believed would help defendant's case, defendant never objected to the prosecutor's statement that defense counsel's argument was made in bad faith. (*People v. Winbush* (2017) 2 Cal.5th 402, 484 [defendant's failure to object to prosecutor's argument that defense counsel " 'intentionally misled' " the jury forfeited any claim on appeal that the prosecutor's argument was misconduct].) Defendant does not argue it would have been futile to object that the prosecutor improperly disparaged defense counsel or that an admonition by the court instructing the jury not to consider the prosecutor's statement would have been ineffective. (*Clark*, *supra*, 63 Cal.4th at p. 577.)

Second, defendant forfeited his claim that the prosecutor improperly vouched for the credibility of Daymen and Geitheim. Defendant never objected to any portion of the prosecutor's

16

argument addressing the officers' credibility, nor does he argue an objection would have been futile or an admonition would not have cured any potential harm. (*Clark*, *supra*, 63 Cal.4th at p. 577.)

Defendant argues that "[t]o the extent defense counsel failed to object or failed to state the proper grounds for an objection to the instances of prosecutorial misconduct, defense counsel's failure to do so constituted ineffective assistance of counsel." Defendant, however, only generally contends that counsel's failure to object to the prosecutor's argument constitutes ineffective assistance. Defendant does not identify any specific omission by counsel, let alone attempt to explain why any particular omission was deficient or prejudicial. Consequently, defendant has failed to substantiate any claim that his counsel's performance was ineffective. (See *Ledesma*, *supra*, 39 Cal.4th at pp. 745–746 [to establish a claim of ineffective assistance of counsel, the defendant must show (1) why counsel's performance fell below an objective standard of reasonableness; and (2) but for the deficient performance, defendant would have obtained a more favorable result at trial].)

### 4. Arguing Facts Not in Evidence and Misleading the Jury

Defendant did, however, preserve his claims that the prosecutor argued facts outside the record and made misleading statements to the jury. Specifically, defendant challenges the prosecutor's statements that he provided defense counsel with Reyes's body camera footage and that she could have presented that footage to the jury. Although defendant didn't object each time the prosecutor made these statements, he did object to the prosecutor's first and last statements on the topic, which the

17

court overruled. Defendant, therefore, has preserved these arguments for appeal. (See *People v. Lima* (2020) 49 Cal.App.5th 523, 533 [" ' "The lack of a timely objection and request for admonition will be excused only if either would have been futile or if an admonition would not have cured the harm." ' "].)

As noted above, a prosecutor enjoys wide latitude in his closing argument, and his argument may be " ' " ' "vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom." ' " ' " (*People v. Jackson* (2016) 1 Cal.5th 269, 349.) To this end, the prosecutor may "argue all reasonable inferences from the record, and has a broad range within which to argue the facts and the law." (*People v. Daggett* (1990) 225 Cal.App.3d 751, 757 (*Daggett*).) It is improper, however, for the prosecutor to argue facts not in evidence or to mislead the jury. (*People v. Mendoza* (2016) 62 Cal.4th 856, 906 (*Mendoza*) [improper to argue facts not in evidence]; *Daggett*, at p. 758 [improper to mislead the jury].)

With respect to the prosecutor's statements that he provided defense counsel the only footage from Reyes's body camera that the People had obtained, that argument was improper because it referenced matters that were not presented to the jury. (See *Mendoza*, *supra*, 62 Cal.4th at p. 906.) During trial, the prosecutor told the court that he had provided defense counsel a copy of the only footage from Reyes's body camera that the People had obtained. He made those representations, however, outside the jury's presence during an evidentiary hearing. The jury was never informed during the evidence phase of trial that footage from Reyes's body camera had been turned over to the defense.

18

It also was improper for the prosecutor to argue that defense counsel could have presented footage from Reyes's body camera. As noted above, the court precluded the parties from presenting that footage to the jury. The prosecutor, therefore, misled the jury by arguing that defense counsel could have played footage from Reyes's body camera if it would have helped defendant's case. (See *Daggett*, *supra*, 225 Cal.App.3d at p. 758.)

Nevertheless, any error during the prosecutor's argument was harmless because it is not reasonably likely that the jury applied the improper statements in an objectionable manner. (*People v. Daveggio* (2018) 4 Cal.5th 790, 854 [" '[W]hen [a] claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' "].) First, the prosecutor's statements that he had provided defense counsel with all the body camera footage addressed only what evidence the parties possessed; they did not ask the jury to draw any impermissible inferences from the evidence concerning defendant's guilt or to misconstrue any of the burdens of proof. Second, the topic of Reyes's missing body camera footage was relevant only to what occurred during the search of defendant's car. But, as we explained above, defendant never challenged any aspect of the search. Rather, he stipulated the search was legal and conceded that he possessed all the items found inside his car, including the nearly 21.5 grams of methamphetamine. Thus, it is not reasonably likely that the prosecutor's statements concerning the missing body camera footage affected the jury's finding concerning defendant's *intent* in possessing the methamphetamine. Finally, the court instructed the jury that nothing the attorneys said during trial

19

was evidence, including their remarks during closing argument. (See *People v. Yeoman* (2003) 31 Cal.4th 93, 139 [jurors are presumed to understand and follow the court's instructions].)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.