Filed 8/14/23  P. v. Ramey CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078809 |
| v. | (Super.Ct.No. BAF1800663) |
| JOSIAH JOHN RAMEY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni, Judge.  Affirmed.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Kristen Ramirez, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Josiah John Ramey was convicted on charges arising from sexually abusing a child, John Doe, who was about six years old at the time of the

1

offenses.  Ramey argues the judgment must be reversed because the trial court abused its discretion in excluding certain evidence.  Specifically, he sought to introduce testimony that purportedly would have shown Doe "was previously molested and exposed to sexual acts and pornography" and that Doe "was regularly and repeatedly left in the care of others and exposed to strange adult men."  Ramey contends that testimony would have helped him show that Doe and Doe's mother misidentified him as the perpetrator.  We affirm the judgment.

## I. BACKGROUND

Doe's father and stepfather were both in the military, so Doe (born Nov. 2005) moved often.  When Doe was three years old, his stepfather was stationed at Camp Pendleton, and the family moved to the area.  Soon after moving to California, Doe's mother befriended a woman who would later become Ramey's wife.  For a few months before Doe turned four, during a "transition" period before her relationship with Ramey developed, Ramey's future wife lived with Doe's family.  After the Rameys married, Doe's mother recalled visiting them at their house in Hemet "quite a few times."

When Doe was seven or eight years old, he and his family moved to Texas.  While living in Texas in June 2016, Doe was interviewed in an investigation into physical abuse by his father.  During the interview, Doe described being sexually abused on one occasion years before, while living in California.  Doe recalled that the perpetrator was a man, married with no children, and a friend of his stepfather.  Doe believed the man was in the military but lived in a house outside the base.  Doe's family was visiting the man's

2

house, and the man stayed with Doe while the other adults went to the store. While Doe and the man were watching television, the man pulled down Doe's shorts and underwear and digitally penetrated his anus. Doe stated that he was "into Spiderman at the time," and that the man "brib[ed]" him with some Spiderman paraphernalia.

The interviewer summarized for Doe's mother what Doe had described, and asked if she knew who the perpetrator might be. Doe's mother said that she "had a pretty good idea of who it was"; indeed, she "had no doubt" that it was Ramey. To "make sure," Doe's mother pulled up several pictures on her phone to imitate a lineup, and showed them to Doe. Doe started crying and picked Ramey's photograph.

In a follow-up interview the same day, Doe stated that the man had also touched Doe's penis, using his hands and mouth. The man had asked Doe if he wanted to do the same to him; Doe responded "no." In the follow-up interview, Doe identified the perpetrator as "Ramey or something like that." Both Doe and Doe's mother later stated, however, that Doe heard the name from his mother, and it was not an independent recollection.

When confronted with Doe's allegations by a police investigator, Ramey insisted that he "did not do any of that." He stated, however, that he had a poor memory, which he attributed to malaria pills he had taken while deployed. He also admitted that he was drinking heavily at the time of the alleged abuse, sometimes to the point of blacking out. He conceded that "if it did happen" it would have been while he "was blacked out drunk," and that it "could be possible" something happened while he was drinking.

3

Ramey said: "My memory's crap. I—it may have happened. It probably did. But if . . . I can't remember I can't admit that I did it." Ramey agreed to write what the interviewer characterized as an "apology letter" to Doe. Ramey wrote: "Dear [Doe], I'm truly sorry for what happened to you. Nothing like this should happen to anyone, especially to someone your age. You have said that I am the person that did this to you. And if this is true, then I am deeply sorry. I cannot definitely recall having done this. So if I'm the one that did this, then there is nothing I can say or do to earn your forgiveness. I pray that you will be able to move forward from this terrible experience and grow to be a great person. My deepest regards, Josiah Ramey."

Ramey was charged with one count of sexual penetration of a child 10 years of age or younger (Pen. Code, § 288.7, subd. (b), count 1), one count of oral copulation of a person 10 years of age or younger (Pen. Code, § 288.7, subd. (b), count 2), and one count of lewd act on a child under the age of 14 (Pen. Code, § 288, subd. (a), count 3).

Doe was 15 years old when he testified at Ramey's trial. Doe recalled Ramey using his hands to touch Doe's penis and penetrate his anus, but he did not recall oral copulation. Doe expressed that he had no doubt that Ramey was the person who had abused him.

Doe's mother testified about an occasion when she left Doe alone for a few hours with Ramey at the Rameys' home, while she and Ramey's wife went shopping for a cake and birthday gifts for Doe (Doe's stepfather was at work). She recalled that she and

4

Ramey's wife brought their then-infant daughters shopping, which meant the date was about November 2011.

Ramey testified in his defense. He did not recall being left alone with Doe, either at their Hemet house or the Oceanside apartment where he and his wife lived before that. Indeed, he recalled no occasion when Doe and his family visited them in Hemet. Ramey's wife and his mother-in-law (who lived with Ramey and his wife at their Hemet home) also testified that they did not remember Doe's family visiting them in Hemet.

After his daughter was born, Ramey cut back on his drinking, and he denied that he ever drank alcohol to the point of being drunk after moving to Hemet. Ramey explained the letter to Doe was intended to let Doe know that he was sorry that the abuse happened, and that he was "hoping to get . . . across that your voice is being heard, that you should be taken seriously no matter what your age is." At the time he wrote the letter, because of his memory problems, he "could not definitively say" if he was the person who abused Doe. On reflection during the years between writing the letter and trial, however, Ramey had become certain that he was not the perpetrator.

The jury convicted Ramey on counts 1 and 3, but found him not guilty on count 2. The trial court sentenced Ramey to 15 years to life.

## II. DISCUSSION

At trial, the defense did not contest that Doe was sexually abused. Rather, the defense's theory was that Doe, influenced by his mother's certainty and her imitation of a lineup, had mistakenly identified Ramey as the perpetrator. In addition to Ramey's own

testimony, his defense was supported by some witness testimony about the lack of a visit by Doe, as well as two expert witnesses, a forensic psychologist specializing in eyewitness memory and suggestibility and a social psychologist and criminalist who testified about police interrogation tactics and false confessions.

In a sealed motion under Evidence Code section 782, the defense also proposed to introduce certain "evidence of prior sexual conduct of the complaining witness." In the defense's view, this evidence tended to show Doe had been abused before meeting Ramey, rebutting "any presumption that [Doe] would not have had any knowledge of the alleged acts if [Ramey] had not committed the alleged acts," and undermining the "credibility" of Doe's identification of Ramey as the perpetrator. In addition, in a motion in limine, the defense sought to introduce evidence of Doe's mother's sexual conduct, which was associated with her "regularly and repeatedly" leaving Doe in the care of other adults and "exposed [Doe] to strange men." In the defense's view, this evidence "called into question" Doe's mother's "credibility in general," and also tended to "undermine" Doe's identification of Ramey as the perpetrator.

The trial court excluded the proffered evidence after hearing argument but without an evidentiary hearing. Ramey argues on appeal that the trial court abused its discretion in excluding this evidence. We are not persuaded.

A. *Additional Background*

The excluded testimony included Ramey's wife's account that once, when she was living with the Does, Doe woke up crying and upset, and saying that he had dreamed his

6

father "had touched his penis and his butt and his private parts." Doe's mother told Doe that it was just a dream, but she told Ramey's wife that the military was "looking into" a claim of molestation by Doe's father.[1]

The court also precluded Ramey's wife from testifying that, on another occasion while she was living with Doe's family, she came home from work and found Doe watching pornography on the television. Doe's mother was "'casual' about the incident and said, 'Boys will be boys.'" Ramey's wife also recalled Doe's mother and stepfather telling mutual friends "about how [Doe] would watch pornography and hump a teddy bear."

One of those mutual friends was not permitted to testify that Doe's mother told her that Doe had taken Doe's mother's lingerie catalog, and that Doe's mother stated she believed he did so because he was being molested by his father when he was at his father's house.

As to Doe's mother's conduct, the trial court did not allow Ramey's wife to testify that, during the period when she was living with the Does, she observed that Doe's mother "'hooked up' with many different men exposing [Doe] to random men." Doe's mother often would ask Ramey's wife to pick up Doe or watch him while she was with a man, but she sometimes "would bring men back to the house." Ramey's wife recalled one occasion when she arrived home and found Doe's mother receiving oral sex from one

---

[1] Our record contains no evidence of an investigation of alleged sexual abuse by Doe's father. Doe was interviewed in an investigation of possible *physical* abuse by his father, which Doe also described in the interview that gave rise to this case.

of those men, and Doe was "peeking around the corner watching [them] engage in sexual acts."

B. *Applicable Law*

Generally, a victim of sexual assault may not be questioned about specific instances of his or her prior sexual activity. (Evid. Code, § 1103, subd. (c); *People v. Woodward* (2004) 116 Cal.App.4th 821, 831.) Evidence Code section 782 provides a limited exception to that general rule, allowing evidence of prior sexual conduct if it is "offered to attack the credibility of the complaining witness." (Evid. Code, § 782, subd. (a).) A motion to permit evidence under Evidence Code section 782 requires "an offer of proof of the relevancy of the evidence of sexual conduct." (*People v. Daggett* (1990) 225 Cal.App.3d 751, 757 (*Daggett*).) That offer of proof must be by an affidavit explaining the relevance of the proffered evidence, accompanying a written motion. (Evid. Code, § 782, subd. (a)(1), (2); *Daggett*, *supra*, 225 Cal.App.3d at p. 757.) "The trial court is vested with broad discretion to weigh a defendant's proffered evidence, prior to its submission to the jury, 'and to resolve the conflicting interests of the complaining witness and the defendant.'" (*People v. Mestas* (2013) 217 Cal.App.4th 1509, 1514 (*Mestas*).) "'[T]he trial court need not even hold a hearing unless it first determines that the defendant's sworn offer of proof is sufficient.'" (*Ibid.*; see Evid. Code, § 782, subd. (a)(2).)

In *Daggett*, the court explained the relevance of the sexual history of the alleged victim in a child molestation case: "A child's testimony in a molestation case involving

8

oral copulation and sodomy can be given an aura of veracity by his accurate description of the acts. This is because knowledge of such acts may be unexpected in a child who had not been subjected to them.[¶] In such a case it is relevant for the defendant to show that the complaining witness had been subjected to similar acts by others in order to cast doubt upon the conclusion that the child must have learned of these acts through the defendant. Thus, if the acts involved in the prior molestation are similar to the acts of which the defendant stands accused, evidence of the prior molestation is relevant to the credibility of the complaining witness and should be admitted." (*Daggett*, *supra*, 225 Cal.App.3d at p. 757.)

Evidence Code section 352 provides that the court "in its discretion" may exclude otherwise admissible evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

We review the trial court's evidentiary rulings under the deferential abuse of discretion standard. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 75; *Mestas*, *supra*, 217 Cal.App.4th at p. 1514.)

C. *Analysis*

Initially, we reject Ramey's argument that he was denied his constitutional right to a fair trial by the exclusion of evidence of Doe's alleged prior sexual history. "There is no fair trial problem with exclusion of all such evidence under Evidence Code section 1103. 'That limited exclusion no more deprives a defendant of a fair trial than do the

9

rules of evidence barring hearsay, opinion evidence, and privileged communications.'
[Citation.]  Therefore, because the trial court may properly exclude all such evidence
without violating a defendant's fair trial rights, there is no merit in the argument that not
admitting some of the evidence under Evidence Code section 782 deprives the defendant
of a fair trial." (*Mestas*, *supra*, 217 Cal.App.4th at p. 1517.)

Further, we find no abuse of discretion in the trial court's conclusion that evidence
of Doe's dream should be excluded without holding an evidentiary hearing.  Particularly
in the absence of corroboration, it is a stretch to characterize Ramey's wife's hearsay
account of Doe's description of a disturbing dream as evidence, rather than speculation.
At most, it is weakly probative, circumstantial evidence raising the possibility of prior
abuse.[2]  "The purpose of an Evidence Code section 782 hearing is to establish the truth
and probative value of the offer of proof, not to allow a fishing expedition based on
sketchy and unconfirmed allegations." (*Mestas*, *supra*, 217 Cal.App.4th at p. 1518.)
There is nothing in the record tending to show that—even when he was four, let alone as
a 15-year-old—Doe had any memory of waking life events similar to those in his dream.
(See *id.* at p. 1517 [after hearing, trial court excluded evidence of events child could not
remember, since they therefore "could not provide her with knowledge of sexual
matters"; court also would have excluded it under Evidence Code section 352].)  An
evidentiary hearing could perhaps have established that at the time of trial, Doe or his

---

[2]  Ramey's proposed evidence that Doe was exposed to pornography offers an
alternative, equally plausible source of age-inappropriate sexual content in a dream.

10

mother had some memory of Doe telling his mother and Ramey's wife about a dream. But the defense did not show that a hearing could have developed evidence of actual abuse of any substantial probative value from dream testimony.

The trial court also did not abuse its discretion in excluding evidence that the four-year-old Doe had watched "pornography." The defense's offer of proof provided no specificity about the video Ramey's wife saw Doe watching, and thus offered no basis to determine whether the depictions were sufficiently similar to the allegations against Ramey as to have relevance. (See *Daggett*, *supra*, 225 Cal.App.3d at p. 757.) In the same vein, even assuming that Doe's reported behavior with his teddy bear or age-inappropriate interest in a lingerie catalog is sexualized conduct, it is not similar to the allegations against Ramey, and therefore was properly excluded for lack of relevance. (See *ibid.*)

Finally, the trial court did not abuse its discretion by excluding the proffered evidence of Doe's mother's prior sexual conduct. Even if it is true that Doe's mother had sex with many people, it does not follow that she left Doe alone with *any* of them. Meeting mother's partners (being "exposed" to them, as Ramey puts it) does not equate to being left alone with them. And even the most disturbing aspect of Ramey's wife's proposed testimony—her walking in on Doe's mother engaged in a sex act, while Doe peeked around a corner to watch—did not involve Doe being left alone with anyone.

Notably absent from the record, including the defense's offers of proof in connection with its Evidence Code section 782 motion and motions in limine, is any

11

evidence indicating that Doe's mother ever left Doe in the care of a male other than Ramey, whether to enable her to meet up with a sex partner or for any other reason. The jury heard Ramey's wife's testimony that Doe was left with the Rameys for extended periods of time, once for several days, another time for about two weeks. Doe's stepfather confirmed that Doe's mother had the Rameys watch Doe. Ramey's testimony, however, was that he never watched Doe on his own. The defense did not attempt to present evidence of any other childcare arrangements for Doe. Nor did the defense inquire on cross examination whether Doe's mother ever left Doe to be watched by any male other than Ramey, though such an inquiry was not precluded by the trial court's evidentiary rulings.

In short, Ramey fails to demonstrate that the excluded testimony would have provided substantial, relevant evidence, rather than speculation and inuendo. He therefore has not demonstrated any abuse of the trial court's discretion.

### III. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____
J.

We concur:

CODRINGTON _____
Acting P. J.

MENETREZ _____
J.

12