Filed 4/26/19

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B289077 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA451103) |
| v. | |
| HECTOR MANUEL RAMIREZ, | |
| Defendant and Appellant. | |

APPEAL from the judgment of the Superior Court of Los Angeles County.  Craig E. Veals, Judge.  Affirmed.

Maggie Shrout, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Stephanie A. Miyoshi and Charles J. Sarosy, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

A jury convicted defendant and appellant Hector Manuel Ramirez of one count of felony hit-and-run driving causing death or injury to another.  Defendant contends the trial court committed evidentiary error by precluding admission of a post-accident hospital record that contained a statement attributed to the victim.  Defendant argues the record should have been admitted as a business record and under the dying declaration exception to the hearsay rule, and that the court abused its discretion and violated his constitutional right to present a defense by precluding its admission.

We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In the early morning hours of September 19, 2016, Latanya Weaver was standing outside the residence hotel where she lived, smoking a cigarette on the sidewalk.  It was around 1:00 a.m. and she had just finished her shift at a nearby restaurant and had walked home.  Calvin Eatman,[1] who also lived in the hotel, walked past her and they exchanged greetings.

As Ms. Weaver continued to smoke her cigarette, she saw Mr. Eatman walk down the street and cross to a bus stop.  After a few moments, she noticed that Mr. Eatman had stepped off the curb and was standing in the street, apparently looking to see if the bus was coming.  There was no traffic on the street at the time, just a few parked cars.

While Mr. Eatman continued to look down the street, Ms. Weaver saw a small, four-door red car approaching fast in

---

[1]    Ms. Weaver did not know Mr. Eatman's name, but recognized him from the building in which they had both been residents for over a year.  We have inserted his name for clarity.

2

the lane closest to the curb.  The car struck Mr. Eatman.  The impact lifted him off the ground.  He landed on his back on the asphalt, slid, and ended up about six or seven feet from where he had been standing.  The red car had tinted windows that were rolled up so Ms. Weaver could not see the driver, but she saw that the car stopped momentarily.  "It looked like he was fixing to stop and see if he was okay . . . and changed his mind and left." The red car then made a U-turn and sped off.

Ms. Weaver immediately called 911 on her cell phone and ran over to where Mr. Eatman was lying in the street.  He was conscious and trying to get up, but she told him to stay down, that she was talking to 911.  She could see he was injured on the back of his head.  There was blood puddling on the asphalt under his head.

Ms. Weaver stayed until the paramedics and police officers arrived so she could explain what happened.

Officer David Machain and his partner arrived on the scene as Mr. Eatman was being placed into the ambulance to be taken to the hospital.  He saw there was a pool of blood on the asphalt. Shortly thereafter, Officer Machain and his partner went to the hospital to speak with Mr. Eatman.  He was conscious and able to speak with them but could not recall any details about what had happened.  "[H]e just thought he was involved in some sort of collision, but he couldn't recall any details."

The day after the incident, Ms. Weaver and her boyfriend saw the red car in the neighborhood.  It was crashed on the side of the road and upside down.  They took down the license plate number and gave it to the police.  Defendant was identified as the owner of the car.

Approximately two weeks later, Mr. Eatman passed away after suffering a heart attack.  The coroner later determined that the cause of Mr. Eatman's death was coronary heart disease, but the blunt force trauma or skull fracture to the back of his head was a contributing cause.

Defendant was charged with felony hit-and-run driving resulting in death or serious injury (Veh. Code, § 20001, subd. (b)(2) [count 1]), and felony hit-and-run driving resulting in injury to another (Veh. Code, § 20001, subd. (b)(1) [count 2]).  As to count 2, it was alleged that in the commission of the offense, defendant inflicted great bodily injury within the meaning of Penal Code section 12022.7, subdivision (a).  It was further alleged defendant had suffered two prior felony convictions that qualified as strikes within the meaning of the "Three Strikes" law (Pen. Code, § 667, § 1170.12) and as serious felonies pursuant to Penal Code section 667, subdivision (a)(1).  It was alleged defendant had three prison priors (Pen. Code, § 667.5, subd. (b)).

In September 2017, the case proceeded to a jury trial.  Ms. Weaver, Detective Jose De Leon (the lead detective), Dr. Vadims Poukens (the coroner), and Officer Machain testified to the facts set forth above.

During the prosecution's case-in-chief, defendant advised the court of his intention to introduce a hospital record containing an alleged statement made by Mr. Eatman to a treating nurse in the emergency room about four hours after the incident.  We reserve a more detailed discussion of the relevant facts to the discussion below.  The court excluded the statement.

Defendant testified in his own defense.  He admitted to having been previously convicted for assault, robbery, burglary and possession for sale, and that he had a drug problem.  He said

4

that in the early morning hours of September 19, 2016, he drove to a neighborhood convenience store to get something to eat. As he left the store, he saw Mr. Eatman (whom he did not know) being assaulted by two men in an apparent robbery attempt. After one of them punched Mr. Eatman in the back of the head, Mr. Eatman was able to get away from his attackers and ran past defendant. Defendant got into his car and started driving down the street in the same direction Mr. Eatman had run. Almost immediately he saw Mr. Eatman standing in the street, waving his arms, trying to flag him down. Defendant felt bad for him so he stopped and let him get into the car.

Defendant said he tried to have a conversation with Mr. Eatman, but he was breathing heavily and not talking much. He said only that he wanted to go to Hawthorne. Without warning, Mr. Eatman opened the passenger door and "jumped out" of the car. They were travelling around 25 to 30 miles per hour at the time. Defendant stopped the car and got out, but he saw Mr. Eatman lying on the road "trying to get up" but he did not see any blood, so he thought he was okay. He also saw that a couple of individuals had walked over to Mr. Eatman and appeared to be helping him, so defendant got back into his car and left. Defendant denied hitting Mr. Eatman with his car. He conceded he did not call 911 or seek any help for Mr. Eatman but said he did not have a phone to do so. He also admitted he did not stop to wait for the police or paramedics to arrive.

Defendant presented the testimony of Edward Acosta as an accident reconstruction expert. Mr. Acosta opined that Mr. Eatman's wounds were more consistent with having jumped or fallen from a moving vehicle than having been struck by a car.

The jury found defendant guilty on count 1. Count 2 was dismissed on the prosecutor's motion. In a bifurcated proceeding, the court found true defendant's prior convictions.

The court sentenced defendant to state prison for 11 years, calculated as follows: a four-year upper term on count 1, doubled due to the strike priors pursuant to Penal Code section 1170.12, subdivision (c)(2)(C), which requires a second strike sentence for an offense that is not a serious or violent felony, plus consecutive one-year terms for each of the three prison priors. The court awarded defendant 1,038 days of custody credits and imposed various fines and assessments.

This appeal followed.

## DISCUSSION

Defendant's sole contention is that the court committed prejudicial evidentiary error. "A trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation]." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.) We find no such abuse here.

The evidentiary issue arose during the prosecution's case-in-chief. Defendant told the court he planned to offer a hospital record containing the following statement attributed to the victim: "However, patient states he was not hit by a car and actually was assaulted with fists to the head." Defendant argued it was admissible as a business record or alternatively as impeachment of the coroner. Defendant contended the coroner was going to say the hit and run accident was a contributing factor in Mr. Eatman's death, and defendant could therefore seek

6

to impeach the coroner with the victim's own statement that he was not hit by a car.

The court expressed concern about the reliability of the statement, noting the uncontradicted evidence that Mr. Eatman had been taken to the hospital with a serious head injury and was bleeding profusely. The court then said, "[b]ut above and beyond that, simply because his statements were included in the medical report doesn't mean that they are admissible" under the business records exception. "We're dealing with two levels of hearsay . . . at a minimum." The court further found the record was not proper impeachment of the coroner, reasoning the coroner could testify that blunt force trauma to the victim's head contributed to his fatal heart attack, but could not opine about what caused the blunt force trauma, whether it was being struck by a car, or physically assaulted.

Defendant agreed to research the issue further, and the court deferred its ruling. Later, defendant advised the court Mr. Eatman's hearsay statement was admissible under the dying declaration exception to the hearsay rule. The court deferred a ruling again to allow defendant the opportunity to present the testimony of the nurse with respect to the circumstances surrounding Mr. Eatman's alleged statement.

The next morning, the nurse testified in an evidentiary hearing pursuant to Evidence Code section 402. She had no recollection of treating Mr. Eatman in the emergency room a year earlier. She stated, "I've seen the chart. I cannot recall what happened or anything."

After the nurse was excused, defendant reiterated his argument the record was admissible as a business record and that Mr. Eatman's statement qualified as a dying declaration.

The prosecutor argued there was no evidence Mr. Eatman believed he was dying, or that he was dying at that time. Mr. Eatman did not pass away until almost two weeks later after suffering a heart attack. The prosecutor further expressed concern about the accuracy of the statement given that Mr. Eatman had suffered a head injury and told first responders he could not recall what happened.

The court found there was no indication the victim believed his death was imminent. The court excluded the record, finding the alleged statement by Mr. Eatman was not reliable and failed to qualify as a dying declaration.

We agree with the trial court's conclusion there was no evidence to support a finding the victim believed his death was imminent at the time the alleged statement was made. "A dying declaration constitutes an exception to the hearsay rule if the statement was made on personal knowledge . . . and 'under a sense of *immediately impending death*.' (Evid. Code, § 1242.) ' "This sense of impending death may be shown in any satisfactory mode, by the express language of the declarant, or be inspired from his evident danger, or the opinions of medical or other attendants stated to him, or from his conduct, or other circumstances in the case, all of which are resorted to in order to ascertain the state of the declarant's mind." ' " (*People v. Monterroso* (2004) 34 Cal.4th 743, 763, italics added; see also *People v. Sims* (1993) 5 Cal.4th 405, 458 ["[t]he chief condition and characteristic of a 'dying declaration' is the 'sense of immediately impending death' "].)

Defendant concedes there was no direct evidence Mr. Eatman believed he was dying when the alleged statement was made but argues the serious nature of his injury (skull

8

fracture) was strong circumstantial evidence he likely believed he could be dying. We disagree. While the head injury was a serious injury, there is nothing else in the record that reasonably suggests Mr. Eatman made the statement believing he was about to die. Defendant did not identify any other applicable exception for admitting the hearsay statement. The trial court was well within its discretion in precluding admission of the record as improper hearsay.

Defendant argues the evidentiary ruling excluded evidence crucial to his defense and thus amounted to a due process violation. Respondent contends the constitutional claim was forfeited because it was not raised below. Defendant concedes he did not expressly raise a constitutional argument in the trial court but urges us to find that defense counsel's arguments adequately preserved the constitutional claim.

Our Supreme Court has held that reviewing courts may deem a contention cognizable on appeal where it "merely restates, under alternative legal principles, a claim otherwise identical to one that was properly preserved by a timely" motion or objection in the trial court. (*People v. Yeoman* (2003) 31 Cal.4th 93, 117; see also *People v. Partida* (2005) 37 Cal.4th 428, 437 [where objection in trial court "fairly informs the court of the analysis it is asked to undertake, no purpose is served by formalistically" requiring the objecting party to also state for the record that an order overruling the objection would "violate due process"].)

Even were we to consider defendant's due process argument, we would reject it. Defendant has not shown he was precluded from presenting a defense. He testified in his own defense and denied hitting Mr. Eatman with his car. He

explained in detail his version of what happened that night, including Mr. Eatman jumping from his car. Defendant also presented the expert testimony of Mr. Acosta who opined that Mr. Eatman's injuries were more consistent with falling or jumping from a car than being struck by a car. Defendant cross-examined Dr. Poukens about the lack of injuries to Mr. Eatman's lower body where the car was believed to have hit him (based on Ms. Weaver's testimony), and the extent of Mr. Eatman's heart disease. Defendant also extensively cross-examined Ms. Weaver and pointed out some inconsistencies in her account of the incident. While defendant contends the hospital record would have lent credibility to his testimony, we are not persuaded its preclusion amounted to a due process violation.

## DISPOSITION

The judgment of conviction is affirmed.


GRIMES, Acting P. J.

WE CONCUR:


STRATTON, J.


WILEY, J.