Filed 12/29/22  P. v. Nikolayan CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B312896 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA067198) |
| v. | |
| EDWARD NIKOLAYAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Jared D. Moses, Judge.  Affirmed.

Cliff Gardner and Daniel Buffington for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews, and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant and appellant Edward Nikolayan (Nikolayan) of kidnapping to commit another crime (Pen. Code, § 209, subd. (b)(1)),[1] rape of an intoxicated person (§ 261, subd. (a)(3)), and sexual penetration of an intoxicated person (§ 289, subd. (e)).

On appeal, Nikolayan argues that his case should be reversed or remanded because (1) the trial court failed to hold a hearing on evidence related to the victim's sexual history (Evid. Code, § 782); (2) the statutory scheme allowing victims of certain sexual offenses to testify with a support person (§ 868.5) violates his due process and confrontation clause rights; (3) the trial court erroneously denied a continuance of his sentencing hearing to allow for the preparation of a supplemental probation report; and (4) insufficient evidence supports his conviction for sexual penetration of an intoxicated person.  We find no reversible error and affirm.

## FACTS AND PROCEDURAL BACKGROUND

**I.      The Criminal Acts**

The prosecution alleged that on the evening of September 19, 2006, Nikolayan accompanied a man named Tigran Bedrosian (Bedrosian) to the Elephant Bar, a bar and restaurant in downtown Burbank.

Earlier that day, Bedrosian had approached a woman, S.F., introduced himself as a filmmaker, and asked if she would be interested in a role in his new film project.  S.F. agreed to meet Bedrosian at the Elephant Bar to discuss the part.  She testified that she did not believe that the meeting would be a "romantic

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

2

date," and that she did not intend to stay at the bar for more than one hour, since she had to be at work by 8:00 p.m. that night.

Bedrosian was late for their meeting, and S.F. testified that she nervously drank three glasses of wine waiting for him to arrive. By the time Bedrosian and Nikolayan arrived, she had started on a fourth glass.

S.F. asked Bedrosian who Nikolayan was. Bedrosian did not answer the question directly, instead telling her "don't worry about him," as Nikolayan "didn't speak English." Bedrosian seated himself on one side of S.F., and Nikolayan sat on the other side of her.

The men ordered S.F. another glass of wine, along with vodka shots for the table. At some point, Bedrosian told S.F. that "he wanted to make a porno." This was the first time S.F. had heard Bedrosian say anything about pornography. S.F. testified that shortly after this revelation, everything "went dark" and she blacked out.

The bartender, Jessica White (White), testified that she had noticed S.F. drinking excessively over the course of the evening. Between the time that Bedrosian and Nikolayan arrived at about 6:30 p.m. and the time that White closed their tab at 7:39 p.m., the group had ordered seven glasses of wine and 11 shots of hard liquor; the latter were mixed with juice and served in oversized shot glasses. White testified that S.F. refused the last shot served to her, and that White cut off any further drinks to her. S.F. had not ordered any of the shots.

At 8:00 p.m., the group left the Elephant Bar. They got into a Dodge Magnum that Bedrosian had rented earlier, and Nikolayan drove them to the Sakura Motel in Glendale. En route, S.F. vomited profusely on herself, Bedrosian, and the

3

car.  She later testified that she was "out of it" and not feeling well.

After renting a motel room, Nikolayan and Bedrosian removed S.F. from the car and carried her prone body, covered with a blanket, up the stairs to their motel room.  They dropped her onto the second floor landing so that Bedrosian could unlock the motel room.  S.F. stirred and began vomiting.  Nikolayan walked into the motel room, and Bedrosian carried S.F. into the room after him.

Nikolayan left and reentered the room at intervals.  At one point, Nikolayan emerged and left the motel in the Dodge Magnum.  When he returned, Bedrosian was standing on the landing outside their motel room, smoking and wearing nothing but a towel around his waist.  The men both went back into the motel room, then left—both fully clothed, with Bedrosian holding a bag—and drove away.

S.F. woke up in the motel room at around 3:00 a.m.  She was alone, naked, and smelled vomit.  She could not find her bra or underwear, and her dress, crumpled in the trash, was soaking wet.  Her wrists, pelvis, and inner thighs were sore.  Prior to the meeting at the Elephant Bar, S.F. remembered inserting a tampon; when she woke up at the Sakura Motel, she discovered that the tampon was gone and the sheets were bloody.

She found her phone and attempted to call Bedrosian, but discovered that his phone number had been deleted from her phone.  She put on her wet dress, walked out of the motel, and called a cab before flagging down a passing police officer.  Security footage shows S.F. leaving the motel at 3:25 a.m., barefoot and wearing a dress.

The police officer later testified that S.F. was "excited or frantic" when she approached him, and that she smelled of alcohol and vomit.  She told the officer that she feared she had been raped.  The officer observed red marks on her wrists, consistent with bruising caused by a person carrying her or holding her wrists above her head; photographs of these marks were entered into evidence.  Sperm samples recovered from S.F.'s vagina matched Nikolayan's DNA.

When the police returned to the motel room later, they discovered S.F.'s underwear and a cigarette butt with Nikolayan's DNA on it.  The comforter from the motel room bed was found balled up and discarded by the motel's elevator.

Investigators discovered that two unidentified men had brought the Dodge Magnum to a car wash sometime after September 19, 2006.  The car's interior was caked in vomit, and detailers cleaning the car found a man's T-shirt and pants, a pair of high-heeled shoes, and a key card for a room at the Sakura Motel.

When questioned by the police, Nikolayan categorically denied any knowledge of the entire incident.  He insisted that he did not drive a Dodge Magnum, that he had never been to the Elephant Bar or the Sakura Motel, and that he did not have sex with anyone on the night of September 19, 2006.

## II.    Trials and Convictions

On December 8, 2010, the Los Angeles County District Attorney's Office filed an information charging Nikolayan with kidnapping to commit another crime (§ 209, subd. (b)(1)) (count 1); rape in concert (§ 264.1) (count 2); rape of an intoxicated person (§ 261, subd. (a)(3)) (count 3); sexual penetration of an

5

intoxicated person (§ 289, subd. (e)) (count 4); and assault with intent to commit a felony (§ 220) (count 5).

Nikolayan pled not guilty, and the case proceeded to trial. Over Nikolayan's repeated objections, his trial attorney conceded the rape charge in count 3 in an attempt to avoid a potential life sentence on the kidnapping charge. (See *People v. Nikolayan* (Mar. 9, 2015, B249123) [nonpub. opn.].)

This strategy was unsuccessful; a jury convicted Nikolayan of kidnapping (count 1), rape (count 3), and sexual penetration of an intoxicated person (count 4). We affirmed defendant's conviction on appeal. (*People v. Nikolayan, supra,* B249123.) However, following the Supreme Court's decision in *McCoy v. Louisiana* (2018) 138 S.Ct. 1500 (*McCoy*),[2] Nikolayan successfully sought a writ of habeas corpus, and the trial court vacated his convictions.

The state retried Nikolayan on the three counts for which he had been convicted originally, and a second jury found him guilty. The trial court sentenced Nikolayan to life imprisonment on the kidnapping charge, and imposed stayed determinate sentences on the rape and sexual penetration charges.

Nikolayan timely appealed.

## DISCUSSION

Nikolayan raises four basic arguments against his conviction and sentencing. We address each of these arguments in turn.

---

[2] The *McCoy* court held that the Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his attorney refrain from admitting guilt, even when the attorney believes that confessing guilt has strategic advantages. (*McCoy, supra,* 138 S.Ct. at p. 1505.)

# I. Evidentiary Hearing on Victim's Alleged Conduct

First, Nikolayan argues that the trial court erroneously denied his request for an evidentiary hearing to determine whether to admit evidence of S.F.'s prior sexual conduct, which he maintains is crucial to assessing S.F.'s credibility as a witness and victim.

### A. *Relevant law and standard of review*

"Under California's rape shield law, specific instances of a complaining witness's sexual conduct are not admissible to prove consent by the complaining witness in a prosecution for specified sex offenses," including rape of an intoxicated person and sexual penetration by a foreign object. (*People v. Fontana* (2010) 49 Cal.4th 351, 354 (*Fontana*); Evid. Code, § 1103, subd. (c)(1).) However, such evidence may be admissible to attack the complaining witness' credibility. (*Fontana*, *supra*, 49 Cal.4th at p. 354.)

To admit evidence of a complaining witness' prior sexual history, a defendant must comply with the procedures established by Evidence Code section 782. (*People v. Mestas* (2013) 217 Cal.App.4th 1509, 1514–1515 (*Mestas*).)

First, the defendant must file a written motion demonstrating that the proffered evidence is relevant to evaluating the victim's credibility, including an affidavit stating the offer of proof. (*Fontana*, *supra*, 49 Cal.4th at pp. 354, 362; Evid. Code, § 782, subd. (a)(1)-(2).) If the defendant's proffer is sufficient, the trial court must hold an evidentiary hearing outside the jury's presence to give the defense an opportunity to question the victim on the offered evidence. (*Fontana, supra*, at pp. 354, 362; Evid. Code, § 782, subd. (a)(3).) However, the trial court need not hold a hearing unless it first determines that the

7

defendant's sworn offer of proof is sufficient. (*Mestas*, *supra,* 217 Cal.App.4th at p. 1515.)

At the conclusion of the hearing, the court must determine whether the probative value of the evidence outweighs the danger of undue prejudice. (Evid. Code, §§ 782, subd. (a)(4); see also § 352.) If so, the court will issue an order detailing the evidence to be admitted and the questions permitted. (Evid. Code, § 782, subd. (a)(4).)

"The Legislature's purpose in crafting these limitations is manifest and represents a valid determination that victims of sex-related offenses deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy." (*Fontana*, *supra*, 49 Cal.4th at p. 362 [citing *People v. Rioz* (1984) 161 Cal.App.3d 905, 916–917].) Accordingly, courts must exercise "[g]reat care . . . to insure that this exception to the general rule barring evidence of a complaining witness' prior sexual conduct . . . does not impermissibly encroach upon the rule itself and become a 'back door' for admitting otherwise inadmissible evidence." (*People v. Rioz, supra,* at pp. 918–919.)

We review the trial court's order excluding evidence pursuant to these provisions for abuse of discretion. (*People v. Gutierrez* (2009) 45 Cal.4th 789, 827.) An abuse of discretion occurs when "the trial court exercise[s] its discretion in an arbitrary, capricious, or patently absurd manner that result[s] in a manifest miscarriage of justice. [Citation.]'" (*People v. Ramirez* (2019) 34 Cal.App.5th 823, 828.) This standard also applies when the defendant is denied an evidentiary hearing under section 782 of the Evidence Code. (See *Mestas*, *supra*, 217 Cal.App.4th at p. 1517.)

B.  *Nikolayan's motion for an evidentiary hearing*

At Nikolayan's second trial, he filed an Evidence Code section 782 motion seeking to introduce evidence of S.F.'s prior sexual conduct.  Specifically, Nikolayan sought to introduce statements purportedly made by S.F.'s ex-husband about her self-reported history of drinking at bars, having assignations with men, and later blaming the trysts on alcohol-induced blackouts.  The motion included an affidavit from Nikolayan's trial counsel, recounting statements that S.F.'s ex-husband allegedly told him.

The trial court denied Nikolayan's motion for two reasons.  First, it found that his proffered evidence was insufficient to open an Evidence Code section 782 hearing, as it consisted solely of unsubstantiated hearsay statements for which no foundation had been laid.  The court expressed "significant questions about the foundation for all this," identifying several layers of hearsay in all his proffered evidence.

Second, the trial court determined that, even assuming the propriety of Nikolayan's evidence, its limited probative value would be significantly outweighed by risk of undue prejudice.  The court noted that S.F. had never accused any of her alleged former flings of criminal activity, rendering her alleged sexual history "fundamentally different" from the facts of this case.  The court went on to describe the ex-husband's alleged statements as "unfairly, improperly inflammatory," and "prejudicial in the way contemplated by [Evidence Code section] 352 . . . which is [evidence that] inflame[s] . . . [the] passions and prejudices of the jurors."

The trial court thus ruled that "none of this [evidence] is admissible," and that Nikolayan had not met his burden to

9

advance to "a [Evidence Code section] 782 actual in-court hearing with live witness testimony."

C.    *Analysis*

On appeal, the central question is whether the trial court abused its discretion by refusing to hold an Evidence Code section 782 hearing on Nikolayan's evidence.  We answer this question with a resounding no.

"The purpose of [an Evidence Code] section 782 hearing is to establish the truth and probative value of the offer of proof, not to allow a fishing expedition based on sketchy and unconfirmed allegations." (*Mestas*, *supra*, 217 Cal.App.4th at p. 1518.) Nikolayan's proffered evidence consists of a collection of statements about the victim's sexual history, allegedly made by the victim, as told to her ex-husband, who then told them to defendant's trial counsel.  This triple hearsay evidence is, to say the least, "sketchy and unconfirmed." (*Ibid*.)  The trial court appropriately decided that this evidence, lacking in credibility and of limited probative value, falls short of the standard required to proceed to an Evidence Code section 782 hearing. (See, e.g., *Fontana*, *supra*, 49 Cal.4th at p. 368 [defendant's first-hand but unconfirmed visual observations of the victim's body, offered to show that the victim allegedly participated in additional sex acts on the day of the rape, were insufficient to warrant an Evid. Code, § 782 hearing].)

Nikolayan argues that he should have been given the opportunity to perfect his evidence at an Evidence Code section 782 hearing.  This ignores that the express purpose of that hearing is not to allow a defendant to develop his offer of proof, but to "allow the questioning of the complaining witness regarding the offer of proof" as filed in the defendant's initial

10

motion. (Evid. Code, § 782, subd. (a)(3).) Nikolayan cites no persuasive legal authority for his contrary contention. (*People v. Ham* (1970) 7 Cal.App.3d 768, 783, overruled on other grounds as stated in *People v. Compton* (1971) 6 Cal.3d 55, 60, fn. 3 ["Where a point is merely asserted on appeal by counsel without any . . . authority for its proposition, it is deemed to be without foundation and requires no discussion"].)

Alternately, Nikolayan argues that this case is controlled by *People v. Daggett* (1990) 225 Cal.App.3d 751 (*Daggett*). In that case, an appellate court held that the trial court erred in denying an Evidence Code section 782 hearing on evidence that the victim, a young child, had been sexually abused prior to the crimes with which the defendant had been charged. (*Daggett, supra,* at p. 757.) Nikolayan interprets this case as requiring a trial court to accept sexual history evidence based on multiple levels of hearsay as a sufficient basis for an Evidence Code section 782 hearing.[3]

But *Daggett* is distinguishable from Nikolayan's case in two important ways. First, the *Daggett* defendant proffered evidence of a contemporaneous interview of the victim by a doctor and a

---

[3]     Nikolayan also characterizes the *Daggett* opinion as holding that "the trial court . . . should have at least held a hearing so counsel could address the perceived foundational shortcomings and determine whether a proper foundation could be established for this evidence." He is incorrect; the *Daggett* court held that the hearing was required "to determine whether the acts of prior molestation were sufficiently similar to the acts alleged here," not to give the defendant an opportunity to correct foundational defects in his offer of proof. (*Daggett, supra,* 225 Cal.App.3d at p. 757.)

11

social worker during an investigation into the former sexual abuse; the interview was documented in the prosecution's files. (*Daggett, supra,* 225 Cal.App.3d at p. 575.) This is a categorically stronger foundation than Nikolayan's counsel's recollections of his oral conversations with the victim's ex-husband.[4]

Second, the victim in *Daggett* was a young child at the time of the alleged assaults, and he was still a young child at the time of the subsequent trial. The *Daggett* court expressed concern about the "aura of veracity" that attaches to child victims of sexual violence, "because knowledge of such acts may be unexpected in a child who had not been subjected to them." (*Daggett*, *supra*, 225 Cal.App.3d at p. 757.) The probative value of evidence of prior sexual abuse is presumptively heightened in a case like *Daggett*, where it can "cast doubt upon the conclusion that the child must have learned of these acts through the

_____

[4]    In his reply brief, Nikolayan argues that *Fontana, supra,* 49 Cal.4th 351 also compels the conclusion that his hearsay evidence was sufficient to launch an Evidence Code section 782 hearing. But like *Daggett*, the hearsay statements proffered in *Fontana* had a significantly stronger foundation than the evidence Nikolayan submitted. The defendant in *Fontana* submitted sexual history evidence consisting of expert opinion formed by medical professionals after conducting examinations of and interviews with the victim on the day of the alleged rape; their opinions indicated that the victim's injuries could have been attributed to separate sexual interactions that had taken place earlier that day; and these experts had already testified in court prior to the defendant's motion. (*Fontana, supra*, at pp. 364, 366.) This evidence is substantially more credible than statements allegedly made by a victim's ex-husband about sexual events that had taken place years prior to the sexual crimes under prosecution.

defendant." (*Ibid*.)  This presumption does not apply in the present case, where the victim is an adult woman.

Given all of the above, we affirm the trial court's decision to forego an evidentiary hearing on Nikolayan's Evidence Code section 782 petition.[5]

## II.     S.F.'s Support Person

Next, Nikolayan argues that the trial court erroneously allowed S.F. to testify with a support person sitting behind her.

### A.     *Relevant law*

In prosecutions for certain violent crimes and sex offenses, including violations of sections 209, 261, and 289, every complaining witness "shall be entitled, for support, to the attendance of up to two persons" while he testifies.  (§ 868.5,

---

[5]      Even if we could overlook the foundational insufficiency of Nikolayan's evidence, we would still affirm on the trial court's alternate ruling that the evidence should be excluded because its probative value was significantly outweighed by the danger of undue prejudice against the victim.

When arguing for his Evidence Code section 782 motion, Nikolayan contended that evidence of S.F.'s alleged history of drunken sexual encounters was relevant to the question of whether S.F. "consented" to the alleged crimes, which he conflated with her overall credibility as a complaining witness. The trial court rationally determined that the proffered evidence, as argued by Nikolayan, posed a significant risk of undue prejudice on the prohibited question of S.F.'s consent, and that the evidence's probative value was outweighed by these risks. (*Mestas*, *supra*, 217 Cal.App.4th at p. 1514 ["The trial court is vested with broad discretion to weigh a defendant's proffered evidence, prior to its submission to the jury, 'and to resolve the conflicting interests of the complaining witness and the defendant.'  [Citation.]"].)

13

subd. (a).) Only one support person may accompany the testifying witness to the stand.  (*Ibid.*)

The California Supreme Court has established that a support person's mere presence with a witness on the stand, pursuant to section 868.5, does not infringe upon a defendant's due process and confrontation clause rights, unless the support person improperly interferes with the witness's testimony, so as to adversely influence the jury's ability to assess the testimony. (*People v. Myles* (2012) 53 Cal.4th 1181, 1214.)

B.      *Analysis*

Nikolayan does not claim that S.F.'s support person behaved improperly, or that the trial court's rulings on the support person violated section 868.5.  Instead, Nikolayan argues that section 868.5 itself is unconstitutional in cases such as this, where the testifying witness is an adult and has not demonstrated an extraordinary need for a support person while testifying.  He claims that the mere presence of S.F.'s support person while S.F. testified violated his due process and confrontation clause rights.

Nikolayan's creative constitutional arguments necessarily fall on deaf ears.  As an intermediate appellate court, we must "take the law as we find it and do not reexamine doctrines approved by the Supreme Court with a view to enunciating a new rule of law." (*Fuller v. Standard Stations, Inc.* (1967) 250 Cal.App.2d 687, 694.)  As noted above, our Supreme Court has already determined that compliance with section 868.5 does not violate a defendant's due process or confrontation clause rights. (*Myles*, *supra*, 53 Cal.4th at p. 1214.)  We must decline

14

Nikolayan's invitation to fashion a new standard for this settled question of law.[6]

## III.   Denial of Motion to Continue Sentencing

Nikolayan also argues that the trial court improperly denied his motion to continue sentencing to allow the production of a supplemental probation report.[7]

---

[6]      Nikolayan argues that even if his first two arguments (contesting the denial of an evidentiary hearing under section 782 of the Evidence Code and the constitutionality of S.F.'s support person, respectively) do not individually warrant reversal, together they constitute cumulative error.  However, a claim of cumulative error first necessitates a finding of error.  There can be no cumulative error if the challenged rulings were not erroneous.  (*People v. Fuiava* (2012) 53 Cal.4th 622, 716.) Because we reject Nikolayan's first two arguments, we also reject his claim of cumulative error.

[7]      Nikolayan also argued for a continuation so that he could hire new counsel to explore "the possibility of filing a new trial motion."  Nikolayan made this request for the first time at his sentencing hearing, in the midst of argument on his unfulfilled request for a supplemental probation report.
      "Generally, the granting of a continuance is within the discretion of the trial court[,] [but] [a] continuance may be denied if the accused is 'unjustifiably dilatory' in obtaining counsel." (*People v. Courts* (1985) 37 Cal.3d 784, 790–791.)  The trial court did not abuse its discretion in denying Nikolayan's 11th-hour request for a continuance to obtain new counsel "for the possibility" of filing a motion for a new, third trial.  (See *People v. Pigage* (2003) 112 Cal.App.4th 1359, 1367 [request for continuance appropriately denied where the defendant "waited until the last minute to express . . . concerns" and "[t]here is no evidence defendant attempted to retain counsel, or had even taken steps to secure funds to hire private counsel"].)

A.    *Relevant law and standard of review*

Rule 4.411(c) of the California Rules of Court requires a trial court to "order a supplemental probation officer's report in preparation for sentencing proceedings that occur a significant period of time after the original report was prepared."  Although a probation report has "obvious utility" in any sentencing proceeding (*People v. McClure* (1987) 191 Cal.App.3d 1303, 1306, fn. 3), it is not necessarily required if the defendant is ineligible for parole (*People v. Dobbins* (2005) 127 Cal.App.4th 176, 180 (*Dobbins*)).

However, the trial court's failure to order or obtain a supplemental probation report does not automatically result in prejudicial error.  Because there is "no federal constitutional right to a supplemental probation report," any "alleged error implicates only California statutory law." (*Dobbins*, *supra*, 127 Cal.App.4th at p. 182.)  Accordingly, our "review is governed by the [*People v.*] *Watson* [(1956) 46 Cal.2d 818, 834–836] harmless error standard." (*Ibid.*)

Under the harmless error standard, remand is required only if a defendant can show a reasonable probability that he would have obtained a more favorable result had a supplemental probation report been prepared.  (See *Dobbins*, *supra*, 127 Cal.App.4th at p. 183.)

B.    *The sentencing hearing*

Two weeks before the sentencing hearing, Nikolayan requested the preparation of a supplemental probation report, as his original probation report had been prepared 11 years earlier. The trial court granted his request and ordered the supplemental report prepared for the upcoming sentencing hearing.

16

At the sentencing hearing, the probation office resubmitted Nikolayan's original probation report. Nikolayan asked for the sentencing hearing to be continued until the supplemental report could be prepared and received by the court.

The trial court denied his request, ruling that Nikolayan was not entitled to a new probation report because he was statutorily ineligible for probation. Alternately, the court ruled that it would impose the maximum sentence regardless of any mitigating factors that a supplemental probation report could potentially present. The court strenuously denounced Nikolayan's "savage, savage behavior" in this case, noted that the evidence for Nikolayan's conviction was "just overwhelming," and concluded that Nikolayan's behavior "warrants somebody spending the rest of their life behind bars."

C. *Analysis*

To succeed on this portion of his appeal, Nikolayan must show a reasonable probability that obtaining a supplemental probation report would have resulted in a more favorable sentence. But Nikolayan does not even attempt argument along these lines.

Instead, he argues that the trial court erroneously concluded that he was ineligible for probation at the time of sentencing and that a probation report could have provided the trial court with useful information. He also asserts, without citation to legal authority, that he was entitled to a supplemental probation report regardless of whether the court would have imposed a more lenient sentence.

The fact remains that any error in proceeding without the supplemental probation report is ultimately harmless. The trial court insisted on sentencing Nikolayan to the maximum term of

17

imprisonment for his bestial conduct when committing the underlying crimes, regardless of any mitigating circumstances that had developed since those crimes took place.  Under these circumstances, Nikolayan cannot show that the absence of a supplemental probation report prejudiced him at the sentencing hearing.

## IV.    Sufficiency of the Evidence

Lastly, Nikolayan argues that insufficient evidence supports his conviction for sexual penetration of an intoxicated person (§ 289, subd. (e)).

A.    *Relevant law and standard of review*

Section 289, subdivision (e), prohibits "an act of sexual penetration when the victim is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused."  Sexual penetration "is the act of causing the penetration, however slight, of the genital or anal opening of any person . . . for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object."  (§ 289, subd. (k)(1).)  A foreign object includes "any part of the body, except a sexual organ."  (*Id.*, subd. (k)(2).)

In considering a challenge to the sufficiency of the evidence, "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.  [Citation.]  'A

18

reviewing court neither reweighs evidence nor reevaluates a witness's credibility.'" (*People v. Albillar* (2010) 51 Cal.4th 47, 60 (*Albillar*).) "The same standard also applies in cases in which the prosecution relies primarily on circumstantial evidence." (*People v. Young* (2005) 34 Cal.4th 1149, 1175.)

    B.    *Analysis*

The prosecution charged Nikolayan with sexual penetration of an intoxicated person for removing S.F.'s tampon. It presented evidence that S.F. had inserted a tampon before meeting with Bedrosian and S.F. at the Elephant Bar; that Nikolayan raped S.F. while she was heavily intoxicated; that she had sustained bruising on her wrists; that she was left in the motel room alone, naked, and covered in vomit; and that S.F. recognized that her tampon had been removed immediately upon regaining her senses.

The trial court instructed the jury that in order to convict defendant, it must find that he penetrated S.F. with the "'specific intent to cause sexual abuse,'" whether for the purpose of gaining sexual gratification for himself or simply to cause pain or discomfort to S.F. The jury convicted defendant of the sexual penetration charge.

Viewed in the light most favorable to the judgment, the record contains substantial evidence from which a reasonable jury could conclude that Nikolayan removed S.F.'s tampon with the requisite criminal intent. Nikolayan had treated S.F. roughly all night, helping to drag her prone body to the motel room, causing bruising on her wrists, and then raping her while she was heavily intoxicated and covered in vomit, all in service of his

19

ultimate goal of sexual gratification.[8] The jury could properly infer that Nikolayan had removed her tampon with the same state of mind. (See *People v. Rios* (2013) 222 Cal.App.4th 542, 567–568 [state of mind generally proved by circumstantial evidence, and therefore intent is ordinarily inferred from facts and circumstances surrounding the offense].) And Nikolayan's later denial of any participation in these acts could be construed as an indication that he understood that his behavior was wrong and harmful to S.F. (*M.N. v. Morgan Hill Unified School Dist.* (2018) 20 Cal.App.5th 607, 628 [evidence that the perpetrator of criminal sexual penetration "knew that his actions would be humiliating and insulting to [the] [v]ictim" can demonstrate specific intent to sexually abuse the victim].) Under these circumstances, we see no reason to overturn the jury's verdict.

---

[8] Indeed, at the sentencing hearing, the trial court, having viewed the same evidence as the jury, characterized "[t]he [security] video" as "so disturbing and so troubling . . . [Nikolayan] and his crime partner . . . treat [S.F.] . . . like an object. And that's a nice way of putting it. They treat her like a piece of meat, like a cadaver o[r] a cow being stuck on a hook. That's how they treat her. The way they unload her from that car and wrap her in that blanket and dump her on the ground by the elevator and allow her to vomit on herself, to bring her into that motel room. And then just to take their sweet time going about their business, standing on the balcony smoking a cigarette wrapped in a towel, it's savage, savage behavior. [¶] It's animalistic behavior. I don't know if animals treat other animals as savagely as [Nikolayan] treated [S.F.]. But it's just savage, absolutely savage behavior that has no place in a civilized society." Given the jury's verdict, they easily could have reached similar conclusions and extrapolated the presence of specific intent therefrom.

20

Nikolayan argues that the most damaging conclusion that could be drawn from the record is that "the removal of the tampon, in of itself, was not for sexual arousal or abuse," but was instead a mere "intermediary step to accomplish a *separate act* involving sexual arousal or abuse." This is a distinction without difference. Following Nikolayan's argument, he penetrated S.F. with the intent of sexually abusing her. Whether Nikolayan derived personal gratification from the penetration itself is of no moment.

In any event, if the record "reasonably justif[ies] the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, *supra*, 51 Cal.4th at p. 60.) Nikolayan's argument that the record equally supports the conclusion that he did not intend to sexually abuse S.F. when he removed her tampon is unavailing.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ


21