Filed 4/15/25  P. v. Chavez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOHN CARILLO CHAVEZ,<br><br>Defendant and Appellant. | 2d Crim. No. B330872<br>(Super. Ct. No. 2020029604)<br>(Ventura County) |

John Carillo Chavez appeals his conviction, by jury, of five counts of committing a lewd act on a child.  (Pen. Code, § 288, subd. (a).)[1]  The jury also found true the following special allegations:  (1) the victim was under 18 years of age and prosecution commenced before her 40th birthday (§ 801.1, subd. (a)(1)); (2) appellant took advantage of a position of trust (Cal. Rules of Ct., rule 4.421(a)(11)); (3) the victim was particularly vulnerable (Cal. Rules of Ct., rule 4.421(a)(3)); and, as to counts 1

---

[1] All statutory references are to the Penal Code unless otherwise stated.

and 2, that appellant had substantial sexual contact with the victim who was then under the age of 14 years.  (§ 1203.066, subd. (a)(8).)  The trial court sentenced appellant to 14 years in state prison.

Appellant contends the trial court prejudicially erred by admitting evidence, under the "fresh-complaint" doctrine, that the victim disclosed the incidents to her mother and by instructing the jury, in terms of CALCRIM No. 318, that it could consider the disclosure for its truth.  He further contends the trial court erred when it excluded evidence that the victim failed to report the incidents to law enforcement when she had the opportunity to do so.  Appellant also contends the trial court erred when it instructed the jury that it could consider a statement made by the victim's father, who did not testify, for its truth.  Finally, he contends the cumulative impact of these errors resulted in prejudice.  We affirm.

*Facts*

The victim, M.C., is appellant's granddaughter.  M.C. was 25 years old and appellant was 83 years old at the time of trial.  When M.C. was 4 and 5 years old, appellant kissed her on the lips and put his tongue in her mouth on at least three separate occasions.  He placed her hand on his penis at least twice.  These offenses occurred at appellant's apartment and at the swimming pool at the apartment complex where M.C. lived with her mother.  M.C. testified that she believed her grandmother saw appellant kiss her at least once and also saw appellant adjusting his pants after he had been alone with M.C.

In 1995, appellant pleaded guilty to misdemeanor child molestation against a neighbor who was then 10 years old.

2

That incident involved appellant hugging and kissing the child on the lips and putting his hands on her buttocks.

M.C. stopped speaking to appellant and her grandmother when she was about 12 years old. She first told her mother about the abuse when she was between 15 and 17 years old. M.C.'s mother testified that, when M.C. was about 15 years old, she disclosed to her mother that appellant had molested her. The disclosure "involved him trying to kiss her and have her touch him." After M.C. made this disclosure, her mother took her to the police station to report it. The police officer they spoke to did not take a report about the incidents. On cross examination, M.C.'s mother clarified that one of the incidents M.C. disclosed was that appellant "had had her touch his penis in the jacuzzi," and that "he kissed her on the patio." She later repeated on redirect examination that M.C. did not "share all the details" with her. Instead, M.C. told her mother that appellant "had [M.C.] touch his penis," and that he "would also kiss her and put his tongue in her mouth." M.C. also told her mother that she thought her grandmother saw one of the kisses.

In September 2020, a police officer made a pretext call to appellant and his wife, representing herself as M.C. Appellant made several incriminating statements during the call. For example, when the officer posing as M.C. asked appellant to "explain . . . [why] you made me touch your penis," he responded, "I'm sorry, mija," and "I was stupid." Each time the detective mentioned appellant kissing M.C. or making her touch him, he apologized. Appellant said that, when MC.'s grandmother found out, she "got mad with me. . . . Oh, we didn't talk for a long time. . . . She was mad. You know. She said we're going to lose, uh, we're going to lose [M.C.] and you know, 'cause what happen."

Appellant said that he "never asked" his grandson to touch him and that it was "just" M.C. Their conversation ended with this exchange:

"[Det.]: [D]id we ever have sex?

"[Appellant]: No.

"[Det.]: So, it was just touching your penis?

"[Appellant]: Yeah. Yeah."

Appellant's wife, Anna, then spoke with the police officer representing herself as M.C. Posing as M.C., the officer told Anna that appellant "'told me what Jack got upset about with him. And he told me that, you know what he did to me about when I was little.'"[2] Anna responded, "'I didn't know anything about that. And one day Jack was so angry.'" Anna continued, "'He was here angry with us and . . . then he came out with that. He said – but he didn't go into detail. He just said, 'Um, the things you did to [M.C.], like that.''" In her trial testimony, Anna maintained that she did not know about the allegations against appellant before the phone call.

About one month after the pretext call, appellant participated in a telephone interrogation with a detective from the Ventura Police Department during which he again made incriminating statements. For example, when asked about M.C.'s allegations, appellant said, "I don't think I would kiss her on her mouth." The detective asked, "So you just made her touch your penis?" Appellant responded, "That was wrong. Guess so. Yeah." He later stated that he made M.C. touch his penis "Only one time." Appellant did not remember the details of the incident but admitted, "I show her, I show her to touch and that's it." He denied having any other sexual contact with M.C.:

_____

[2] Jack is M.C.'s father. He is the son of appellant and Anna.

4

"[Det.]: So, you just, you just made her touch it and that's it?

"[Appellant]: Yeah, that's all. That's it."

At trial, appellant, his wife and his adult daughter denied any inappropriate contact with M.C. Appellant also testified that he has a hearing impairment. An expert witness testified regarding interrogation techniques and false confessions, describing techniques that researchers associate with false confessions. He noted that false confessions may be associated with "the vulnerability of the suspect," and "the nature of the questioning . . . ." The expert witness did not offer an opinion as to whether appellant is a "vulnerable" person or whether any of the interrogation techniques he identified as problematic were used in questioning appellant.

*Contentions*

Appellant contends the trial court prejudicially erred when it admitted evidence that M.C. disclosed the abuse to her mother when she was about 15 years old and when it instructed the jury, in terms of CALCRIM No. 318, that it could consider M.C.'s statement for its truth. He contends the trial court erred when it excluded evidence that M.C. reported sexual assaults by others, including another relative, but did not also disclose the assaults committed against her by appellant. Appellant further contends the trial court erred when it instructed the jury that it could consider for their truth the statements M.C.'s father, Jack, made explaining why he was angry with appellant and Anna. Finally, appellant contends the cumulative impact of these errors requires reversal.

5

*Discussion*

Fresh Complaint Evidence.

The trial court admitted M.C.'s disclosure to her mother under the "fresh-complaint" doctrine.  As explained by our Supreme Court in *People v. Brown* (1994) 8 Cal.4th 746 (*Brown*), "*[U]nder principles generally applicable to the determination of evidentiary relevance and admissibility*, proof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose – namely to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others – whenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred."  (*Id.* at pp. 749-750, emphasis in original.)  Because evidence of the complaint or disclosure is admitted for this nonhearsay purpose, "only the fact that a complaint was made, and the circumstances surrounding its making, ordinarily are admissible; admission of evidence concerning details of the statements themselves, to prove the truth of the matter asserted, would violate the hearsay rule."  (*Id.* at p. 760.)  Further, considering the limited purpose of which it is admitted, evidence of the disclosure "should be limited to the fact of the making of the complaint and other circumstances material to this limited purpose."  (*Id.* at p. 763.)

The trial court here instructed the jury in terms of CALCRIM No. 318, which provides "You have heard evidence of statements that a witness made before the trial.  If you decide that the witness made those statements, you may use those statements in two ways:  1. To evaluate whether the witness's

6

testimony in court is believable; AND 2. As evidence that the information in those earlier statements is true."

Appellant contends the trial court prejudicially erred because the fresh-complaint evidence it admitted was too detailed. He further contends the trial court erred when it instructed the jury that it could consider the fresh complaint evidence for its truth. Respondent correctly concedes that it was error to apply CALCRIM No. 318 to the fresh complaint evidence at issue here. "Evidence admitted pursuant to [the fresh-complaint] doctrine may be considered by the trier of fact for the purpose of corroborating the victim's testimony, but not to prove the occurrence of the crime." (*People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1522 (*Ramirez*).)

However, respondent contends appellant forfeited appellate review of this issue because, although he requested a limiting instruction prior to trial, appellant did not raise the issue or object to the instruction during the jury instruction conference. Respondent further contends any error was harmless because M.C.'s testimony was corroborated by appellant's admissions and by the testimony of the person he was convicted of assaulting in 1995.

We decline to find the issue forfeited because appellant objected to the admission of fresh complaint evidence prior to trial. In pretrial motions, the prosecution requested permission to admit evidence of M.C.'s disclosure to her mother. Defense counsel moved to exclude the evidence or, in the alternative, for a limiting instruction. The trial court denied the defense motion, finding the "barebones" of M.C.'s disclosure would be admitted, limited to date, nature and circumstances of

7

the disclosure.  The trial court ordered, "[I]t's limited to that.  It's not a discussion about specific details."

As a general rule, contentions of evidentiary or instructional error are forfeited on appeal if not raised in the trial court.  (*People v. Hill* (1998) 17 Cal.4th 800, 820-821.)  Failure to object in a timely and specific manner will, however, be excused where the objection would have been futile.  (*People v. Brooks* (2017) 3 Cal.5th 1, 92; *People v. Clark* (2011) 52 Cal.4th 856, 960.)

Here, prior to trial, defense counsel objected to the fresh complaint evidence and requested a limiting instruction. The trial court overruled the objection and declined to give a limiting instruction.  In light of this ruling, appellant did not forfeit appellate review of his objections by failing to repeat them later in the trial because further objection would have been futile.

The trial court erred when it instructed the jury that it could consider M.C.'s disclosure to her mother as evidence that the offenses against her actually occurred.  As the court emphasized in *Brown,* "only the fact that a complaint was made, and the circumstances surrounding its making, ordinarily are admissible; admission of evidence concerning details of the statements themselves, to prove the truth of the matter asserted, would violate the hearsay rule." (*Brown, supra,* 8 Cal.4th at p. 760.)

The error was, however, harmless because it is not reasonably probable a different result would have been reached had the evidence been excluded or had a correct instruction been given.  (*People v. Manning* (2008) 165 Cal.App.4th 870, 880-881.) M.C. testified at length, giving the jury ample opportunity to evaluate her credibility.  In the pretext call and telephone

interview, appellant made numerous admissions that corroborated her testimony. The victim from appellant's 1995 conviction also described being molested by appellant in similar fashion.

M.C.'s mother, by contrast, testified that M.C. disclosed appellant had kissed her on the mouth and made her touch his penis. M.C. described two locations where these incidents occurred but otherwise did not "share all the details" about the assaults. It is not reasonably likely that this brief testimony would have convinced the jury of M.C.'s credibility when her own testimony and appellant's admissions did not. Any error in admitting the fresh complaint was harmless as was the instructional error.

Evidence of Failure to Report.

Prior to trial, appellant requested permission to admit evidence that M.C. reported she had been sexually assaulted as a teenager by an adult man and, as a young child, by one of her cousins. She did not mention at that time any sexual assaults by appellant. The trial court concluded it would allow defense counsel to ask M.C. whether she had ever reported a sexual assault by appellant prior to reporting the allegations in this case. Evidence of prior complaints against others would be excluded under Evidence Code sections 352 and 782. Appellant contends this ruling was an abuse of discretion. Respondent contends the evidence was properly excluded because it was not relevant to M.C.'s credibility and had the potential to confuse the jury. We agree with respondent.

Evidence Code section 782 establishes a procedure for determining prior to trial whether evidence of a complaining witness's sexual conduct is admissible to impeach the credibility

9

of that witness.  (*People v. Fontana* (2010) 49 Cal.4th 351, 362.)
The statute is designed to protect victims of sexual assault
against "surprise, harassment, and unnecessary invasions of
privacy."  (*Ibid*.)  To that end, "our courts have properly exercised
the discretion afforded by Evidence Code section 782 'narrowly'
[citation], and we emphasize that '[g]reat care must be taken to
insure that this exception to the general rule barring evidence of
a complaining witness' prior sexual conduct . . . does not
impermissibly encroach upon the rule itself and become a "back
door" for admitting otherwise inadmissible evidence.' . . ."  (*Id*. at
pp. 362-363, quoting *People v. Rioz* (1984) 161 Cal.App.3d 905,
918-919.)

       The theory underlying the admission of this evidence
where the complaining witness is a child "is that a child would
not have knowledge of certain sexual practices other than as a
result of the prior molestation."  (*People v. Woodward* (2004) 116
Cal.App.4th 821, 831.)  "In such a case it is relevant for the
defendant to show that the complaining witness had been
subjected to similar acts by others in order to cast doubt upon the
conclusion that the child must have learned these acts [from] the
defendant.  Thus, if the acts involved in the prior molestation are
[like] the acts of which the defendant stands accused, evidence of
the prior molestation is relevant to the credibility of the
complaining witness and should be admitted."  (*People v. Daggett*
(1990) 225 Cal.App.3d 751, 757 (*Daggett*).)

       Evidence Code section 782 further requires that
evidence of sexual conduct offered as impeachment must also be
admissible under Evidence Code section 352.  (*Doe v. Superior
Court* (2023) 15 Cal.5th 40, 53-55.)  This means the evidence
must have more than "'slight relevancy'" and that its probative

value must substantially outweigh the probability that its admission will result in undue consumption of time, confusion of the issues, undue prejudice or misleading the jury. (*People v. Homick* (2012) 55 Cal.4th 816, 865.) The trial court has broad discretion to exclude evidence on collateral matters that is offered for impeachment. ""The statute empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues." . . .'" (*People v. Lewis* (2001) 26 Cal.4th 334, 374-375.)

Here, evidence of M.C.'s prior sexual assault allegations had little relevancy for impeachment purposes because she was an adult when she disclosed the assaults at issue here. As a result, it is not reasonable to infer that M.C. could only have learned about kissing or fondling from being molested by appellant. (*Daggett, supra,* 225 Cal.App.3d at p. 757.)

The trial court excluded evidence of the details of M.C.'s reporting the prior assaults because it concluded this evidence would "create a trial within a trial." In effect, it found that the probative value of that evidence was substantially outweighed by the time it would take to explain these prior assaults and reports, and the likelihood the jury would be confused by that evidence. This conclusion was not an abuse of discretion. There was ample evidence that M.C. delayed disclosing her accusations against appellant. Evidence that she had additional reporting opportunities would have been duplicative.

Moreover, any error in excluding the evidence was harmless. For the reasons we have already explained, we

11

conclude it is not reasonably probable the result would have been different had the evidence been admitted.

Instructional Error

Appellant's wife, Anna, testified that she was not aware of M.C.'s accusations until the pretext call. This testimony was impeached by her statement in that same call that their son, M.C.'s father Jack, was angry with appellant about "the things [appellant] did to [M.C.] . . . ." The trial court instructed the jury in terms of CALCRIM No. 318 that it could consider evidence of statements made by a witness before trial "[a]s evidence that the information in those earlier statements is true." (*Ibid*.) Appellant contends the instruction, as applied to Anna's testimony about Jack's statement, was error.

Unlike the evidence of M.C.'s disclosure to her mother, this testimony was not the subject of a motion in limine. Appellant did not attempt to exclude it and did not request any modification or amplification of CALCRIM No. 318 at trial. Consequently, appellant has forfeited review of the claim. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 901; *People v. Tuggles* (2009) 179 Cal.App.4th 339, 364-365.)

Had the issue been preserved for review we would reject it because any error was harmless. Anna's testimony that Jack was angry with his parents at some point in time was vague and had little probative value to corroborate M.C.'s accusations. M.C.'s testimony was fully corroborated by appellant's own admissions and by the testimony of the person he molested in 1995. There is no reasonable probability that Anna's testimony about her son's anger would have persuaded the jury to believe M.C. when her own testimony and appellant's admissions did not. (See, e.g., *Ramirez, supra,* 143 Cal.App.4th at p. 1526 [admitting

hearsay statements was harmless error where victim testified and "the jury did not have to rely solely on secondhand statements she made to third parties"].)

Cumulative Error

Appellant contends he was prejudiced by the cumulative effect of these errors.  We have concluded each error was harmless when considered separately. Considering them together, we likewise conclude that their cumulative effect does not warrant reversal.  For the reasons we have already explained, there is no reasonable probability the jury would have reached a more favorable verdict in the absence of these errors. (*People v. Pineda* (2022) 13 Cal.5th 186, 260; *People v. Holt* (1984) 37 Cal.3d 436, 459.)

*Conclusion*

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, Acting P. J.

We concur:


BALTODANO, J.


CODY, J.

13

Anthony J. Sabo, Judge

Superior Court County of Ventura

_____

Law Offices of Christopher Muller, and Christopher Muller, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield, Supervising Deputy Attorney General, Lindsay Boyd, Deputy Attorney General, for Plaintiff and Respondent.